# In the

# United States Court of Appeals

## For the Seventh Circuit

—————————

No. 04-2722

MARK WILSON,

*Plaintiff-Appellant,*

v.

MCRAE'S, INC., **doing business
as Carson Pirie Scott & Co.,**

*Defendant-Appellee.*

—————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 01 C 0281—**Blanche M. Manning**, *Judge.*

—————————

ARGUED FEBRUARY 9, 2005—DECIDED JULY 1, 2005

—————————

Before BAUER, EASTERBROOK, and ROVNER, *Circuit
Judges.*

EASTERBROOK, *Circuit Judge.* As he was leaving the
Carson Pirie Scott department store in Chicago's Loop with
two bed sheets, Mark Wilson was stopped and accused of
shoplifting. Mahmoud Yassin, the store's "lead loss preven-
tion agent," called the police and held Wilson in handcuffs
until they arrived. In the officers' presence Yassin signed a
criminal complaint stating that he had seen Wilson pick up
the sheets from a display, put them in a bag, and head for
an exit without paying. The police arrested Wilson, who was

detained for about 13 hours before being released on bail. When Yassin failed to appear on the date set for Wilson's trial, the judge dismissed the criminal charges. Wilson then filed this suit against Carson Pirie Scott. Although he did not name either arresting officer as a defendant, he contends that Carson Pirie Scott itself is a state actor, so that 42 U.S.C. §1983 supplies a remedy. The district judge granted summary judgment for the defendant, holding that Wilson's grievance arises under state law (for false arrest, malicious prosecution, or a related theory) rather than the federal Constitution or 42 U.S.C. §1982 (Wilson's fallback claim).

Private entities may be treated as state actors when the state effectively transfers authority to them. That general statement of the legal norm has a concrete application to arrests for shoplifting or similar charges at the behest of commercial establishments: "shopkeepers are engaged in 'state action' when they strike a deal with the police under which the police simply carry out the shopkeepers' directions. If the police promise to arrest anyone the shopkeeper designates, then the shopkeeper is exercising the state's function and is treated as if he were the state." *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 435 (7th Cir. 1986), deriving this approach from *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Wilson contends that two facts demonstrate that Illinois handed over its police power to the department store. First, the officers did not conduct an independent investigation but relied on Yassin's claim, even though Wilson told them that Yassin was lying and offered a receipt from another retailer to show that he was the sheets' owner. Second, the two arresting officers acknowledged that they had never refused to arrest anyone whom Carson Pirie Scott accused of shoplifting. (We call the first of these propositions a fact even though Carson Pirie Scott insists that Yassin told the truth and that Wilson is lying about having a receipt. Given the posture of the litigation

we must accept Wilson's position.) Neither of these propositions would allow a reasonable trier of fact to infer that Carson Pirie Scott is exercising state power delegated by the Chicago Police.

The first of Wilson's propositions—that the officers did not conduct their own investigation—was equally true in *Gramenos*, which held that lack of investigation does not support an inference that the police are the merchant's tools. Officers regularly rely on people who claim to be eyewitnesses to (or victims of) crime; that reliance does not imply that the victims are exercising state power. What is more, the two officers swore in depositions that they normally do conduct their own investigations rather than accept retailers' say-so. Wilson did not try to undermine this contention—as he might have done by, for example, gathering evidence about their conduct in a random sample of recent arrests. Wilson's only evidence concerns the events of his own arrest, and one event cannot demonstrate the sort of long-term delegation that implies a transfer of authority from the police department to the department store.

Wilson's second proposition—that these two officers have made an arrest every time Carson Pirie Scott pressed charges—conflates two people with the whole Police Department. Wilson has not endeavored to learn Carson's overall record of success when it presses charges; again the evidence is confined to one instance. Nor would repeated conduct imply agreement. Suppose that Wilson has purchased Ford autos for his entire adult life; that does not imply that he has *agreed* with Ford to buy his next car from it. It would show satisfaction with the product so far, not a commitment to act in the future. Likewise if Carson for the last decade has hired every Bryn Mawr graduate who applied for a job; this would evince satisfaction with the graduates rather than a promise to hire future applicants. Cf. *United States v. Lechuga*, 994 F.2d 346 (7th Cir. 1993) (en banc).

What might support Wilson's claim would be proof that police always arrest whomever Carson Pirie Scott accuses even though the suspects are frequently acquitted at trial—while other department stores have lower arrest rates and higher conviction records among those arrested. Such a pattern would show that something unusual was going on between the police and Carson Pirie Scott. But, to repeat, Wilson offers no comparative or systemic evidence. The deficiency is not, as the district judge stated, that Wilson's evidence is "self-serving." Most affidavits are self-serving, as is most testimony, and this does not permit a district judge to denigrate a plaintiff's evidence when deciding whether a material dispute requires trial. See *Payne v. Pauley*, 337 F.3d 767, 772-73 (7th Cir. 2003). The problem is that what happened to Wilson, even if it occurred exactly as he narrates events, does not show an agreement between Carson and the Police Department.

This leads us to Wilson's claim under §1982, which provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." Wilson contends that Carson had him arrested, and forbade him to reenter its store, because he is black; this means, he asserts, that he has been denied the same right to "purchase" property that Carson extends to white shoppers. (He also contends that Carson confiscated "his" sheets because of his race and thus infringed his right to "hold" personal property.) Once again, however, Wilson lacks evidence from which a reasonable trier of fact could conclude that his race, rather than Yassin's belief that he was shoplifting, accounts for the events.

This time Wilson has no person-specific evidence but some systemic data: He contends that 90% of all persons arrested for shoplifting at Carson Pirie Scott's Loop store are black or Hispanic. This, however, does not create even

a prima facie case of discriminatory arrests and prosecutions. The Supreme Court held in *United States v. Armstrong*, 517 U.S. 456 (1996), and *United States v. Bass*, 536 U.S. 862 (2002), that raw arrest data are insufficient. Maybe 90% of all shoplifters at the store are minorities, and arrest practices are race-neutral. What is essential, the Court concluded, is some evidence of disparate treatment—here, either that whites known to pilfer are not arrested, or that minorities are accused on weaker suspicion. One potential source of evidence is the disposition of charges that Carson presses. If, for example, courts dismiss prosecutions of black shoppers at higher rates than they dismiss charges against white shoppers, this could imply that Carson is engaged in discrimination by making charges against minority customers on flimsy bases, while letting similarly situated white customers walk away. (We say "could" rather than "would" because it may be necessary to control for other sources of variance.) See *Anderson v. Cornejo*, 355 F.3d 1021, 1023-25 (7th Cir. 2004), which discusses this method of establishing discrimination through statistical inference. All Wilson proffers, however, is the sort of raw arrest data that *Armstrong* and *Bass* have held insufficient.

After dismissing Wilson's claims under federal law, the district court relinquished supplemental jurisdiction over his state-law theories, such as wrongful arrest and malicious prosecution. Wilson then sought reconsideration, see Fed. R. Civ. P. 59(e), contending that the litigants are of diverse citizenship and that the stakes exceed $75,000, so that the district court should resolve the state-law claims on the merits. The district court denied this motion, and we share its view that jurisdictional grounds must be set out early in the litigation—when they are subject to adversarial testing—rather than after a decision has been rendered on the merits. How would one test, on a post- judgment motion, Wilson's new claim about his citizenship and the

stakes of the suit? Complaints must describe the jurisdictional foundation of the suit, see Fed. R. Civ. P. 8(a), and Wilson's asserted *only* federal-question jurisdiction. As "[t]he plaintiff is absolute master of what jurisdiction he will appeal to", *Healy v. Sea Gull Specialty Co.*, 237 U.S. 479, 480 (1915), the district judge was entitled to hold him to his choice.

If, as Wilson contends, diversity jurisdiction exists, he can file a new suit in federal court tomorrow raising the state-law claims. He can use discovery already taken; there is no need to go through that process again. In a fresh suit Carson will be free to contest the allegations about both citizenship and the amount in controversy. This is a cleaner route than an attempt to add new theories to an old case. We don't say that the judge would have abused her discretion in allowing a belated amendment to the complaint to allege diversity jurisdiction. See 28 U.S.C. §1653. But neither did she abuse her discretion in treating a motion to reconsider as a motion to *reconsider*, rather than as a request to add new issues to the litigation after judgment had been entered.

AFFIRMED

A true Copy:

      Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*