NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 3, 2010
Decided August 6, 2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 09-3886

| | |
|---|---|
| MIKEAL WOODEN-OUSLEY, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 1:08-cv-03381 |
| CITY OF CHICAGO, et al., | |
| *Defendants-Appellees*. | Charles P. Kocoras, |
| | *Judge*. |

### O R D E R

Mikeal Wooden-Ousley claims that Julie Mendez, a detective with the Chicago Police Department, committed a constitutional tort when she falsely arrested him for carjacking. *See* 42 U.S.C. § 1983. The district court reasoned that Detective Mendez had probable cause to arrest Wooden-Ousley and granted summary judgment against him. On appeal Wooden-Ousley argues that Detective Mendez conducted an inadequate investigation. But two eyewitnesses fingered him as their assailant, and those identifications are sufficient to establish probable cause to make an arrest. We affirm the district court's judgment.

Wooden-Ousley was arrested for carjacking Jorge Palomino and Christina Salgado. Palomino was driving a van when a car pulled up alongside honking its horn. One of the car's

passengers stepped out, pointed a gun at Palomino and Salgado, and declared that the van belonged to him. The gunman then climbed into the van and drove off.

Detective Mendez began her investigation of the carjacking by speaking to Maria Gutierrez, Salgado's sister. Gutierrez explained that she and her husband previously owned the van but sold it to a man whose name she could not recall. Gutierrez told Detective Mendez that, a few weeks before the carjacking, she received a notice in the mail that the van had been towed. She was not able to get in touch with the buyer, she said, so she retrieved the van from the impound lot herself and gave it to Salgado.

Detective Mendez decided to investigate why the van had been towed. She pulled the report and learned that a man who identified himself as Wooden-Ousley was sitting in the passenger seat of the parked van when a police officer, suspecting that the vehicle had been stolen, ordered it towed. Before approaching, the officer had observed that the van had no license plate and that its steering column was "peeled," which is a sign of theft. The man inside the van produced a driver's license identifying himself as Wooden-Ousley, and the officer matched the photograph on the license with the occupant's face.

At this point Detective Mendez wondered whether Wooden-Ousley might have committed the carjacking. To test the theory she showed his photograph to Gutierrez, who confirmed that he was the man to whom she had sold the van. Next Detective Mendez assembled an array that included Wooden-Ousley's photograph as well as photographs of five similar-looking men. Both Palomino and Salgado identified Wooden-Ousley as the man who had stolen the van from them at gunpoint. Detective Mendez then had Wooden-Ousley arrested, placed him in a lineup, and summoned Gutierrez, Palomino, and Salgado. Gutierrez quickly identified him as the purchaser of her van, and Palomino and Salgado each fingered him as the carjacker. Detective Mendez then handed over the case to an assistant state's attorney, who approved several charges against Wooden-Ousley, including aggravated vehicular hijacking with a weapon. A jury, however, acquitted him of all charges arising from the incident.

Wooden-Ousley then filed this lawsuit under § 1983, claiming that Detective Mendez deprived him of his Fourth Amendment right against unreasonable seizure by arresting him without probable cause. In addition, he asserted a state-law claim for malicious prosecution against the City of Chicago. But the district court granted summary judgment against him on both claims, reasoning that the facts known to Detective Mendez at the time of the arrest were sufficient to allow a reasonable person to conclude that Wooden-Ousley had committed an offense.

The sole issue raised by Wooden-Ousley on appeal is whether Detective Mendez had probable cause to arrest him. If she did, then he cannot prevail on his false-arrest claim. *See Stokes v. Bd. of Educ.*, 599 F.3d 617, 622 (7th Cir. 2010). But Wooden-Ousley argues that the evidence he presented at summary judgment is sufficient to reach a jury on the question whether Detective Mendez "overlooked, ignored, fabricated, and disregarded crucial evidence."

The thoroughness of Detective Mendez's investigation does not matter, however, so long as a reasonable person would conclude that the information she had before her established probable cause to arrest Wooden-Ousley. *See, e.g., Stokes*, 599 F.3d at 624; *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009); *Mustafa v. City of Chicago*, 442 F.3d 544, 548 (7th Cir. 2006). And the problem for Wooden-Ousley is that "it does not take much to establish probable cause. The officers must have more than a bare suspicion that they have the right guy, but they need not have enough evidence to support a conviction or even to show that their belief is more likely true than false." *Fox v. Hayes*, 600 F.3d 819, 833 (7th Cir. 2010).

Wooden-Ousley identifies no reason to disturb the district court's conclusion that the information Detective Mendez had before her established probable cause to arrest him for carjacking. It is undisputed that two eyewitnesses—Palomino and Salgado—identified him as the man who pointed a gun at them and drove off in their van. *See, e.g., Askew v. City of Chicago*, 440 F.3d 894, 895 (7th Cir. 2006) (explaining that eyewitness identification provides probable cause to arrest); *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000) (same); *Tangwall v. Stuckey*, 135 F.3d 510, 520 (7th Cir. 1998) (same); *Gramenos v. Jewel Cos.*, 797 F.2d 432, 439 (7th Cir. 1986) (same). The parties also agree that the assailant claimed to own the van and that Gutierrez identified Wooden-Ousley as the man to whom she had sold the van. In addition, a police report marked him as the sole occupant of the van immediately before it was towed. Under these circumstances a reasonable officer would be justified to conclude that Wooden-Ousley had committed the carjacking.

Instead of addressing the district court's reasoning head-on, Wooden-Ousley points to supposed shortcomings in Detective Mendez's police work. First he takes issue with her identification procedures, insisting that she should have shown Gutierrez an array of photographs instead of just a single photograph of him. He also says that she should have separated Palomino and Salgado before showing them the array. Plus, he continues, it was improper for her to allow all three witnesses to view the physical lineup at the same time. But he does not cite any authority for his proposition that an identification obtained by these procedures falls short of establishing probable cause to make an arrest; nor does he explain *how* these circumstances might have tainted the identifications. In any event mere "inconsistencies and glitches" are common in police investigations and "do not disentitle police to rely on

eyewitness statements." *Askew*, 440 F.3d at 897. It is true that Wooden-Ousley was 10 inches taller and 55 pounds heavier than the description of the carjacker that Palomino and Salgado gave at the crime scene. But at most the discrepancy suggests that, during a brief encounter at gunpoint, the victims of a violent crime may have trouble accurately estimating their assailant's height and weight; it does *not* suggest that Detective Mendez manipulated the identification procedures. *See id.* at 896-97; *Tangwall*, 135 F.3d at 516-17 & n.11 (citing *Gramenos*, 797 F.2d at 437-38).

Wooden-Ousley also argues that Detective Mendez should not have accepted either the tow report or Gutierrez's story at face value; if she had investigated further, he suggests, she would have discovered unspecified information absolving him of the crime. But, as explained above, Palomino and Salgado's identification of Wooden-Ousley as their assailant was sufficient, on its own, to give Detective Mendez probable cause to arrest him. And once probable cause was established, Detective Mendez was not required to conduct further investigation before actually making the arrest. *See, e.g., Stokes*, 599 F.3d at 624; *McBride*, 576 F.3d at 707; *Mustafa*, 442 F.3d at 548. In any event, Wooden-Ousley has not specified what exculpatory evidence he thinks Detective Mendez would have found if her investigation had unfolded along the lines he suggests in his brief.

Wooden-Ousley's state-law claim for malicious prosecution is also doomed. An essential element is lack of probable cause to institute criminal proceedings. *See Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996); *see also Johnson v. Saville*, 575 F.3d 656, 662 (7th Cir. 2009) (applying Illinois law). But Detective Mendez *had* probable cause to arrest Wooden-Ousley, and he has not pointed to any exculpatory information that came to light in the short time between his being arrested and being charged. *See Porter v. City of Chicago*, 912 N.E.2d 1262, 1273 (Ill. App. Ct. 2009).

AFFIRMED.