In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-2738

SARA BRIDEWELL, RANDY MANUEL, and LISA RHODES,

*Plaintiffs-Appellants*,

*v.*

KEVIN EBERLE, BRIAN FORBERG, and CITY OF CHICAGO, ILLINOIS,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 08 C 4947 — **Harry D. Leinenweber**, *Judge*.

ARGUED APRIL 5, 2013 — DECIDED AUGUST 27, 2013

Before EASTERBROOK, *Chief Judge*, and FLAUM and WOOD, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Following a hit-and-run collision, the driver of the struck vehicle took off in pursuit of the fleeing one. Walter Chandler, who had left the scene, eventually turned into what appeared to be a dead-end alley; Lisa Rhodes pulled up behind him, blocking his exit. Rhodes had the advantage of numbers. She was accompanied by

Sara Bridewell, Randy Manuel, and Anthony Watkins. All but Watkins got out of the car and confronted Chandler. Rhodes reached into Chandler's car and took the key. Before long, Bridewell yelled that Chandler had a gun and the three moved off. A shot rang out. The horn of Chandler's car began to sound; his head was pressing the button. Minutes later two men were seen in the alley; they may have been Manuel and Watkins, but perhaps not. A witness, who saw one of these two carrying a gun, heard two more shots.

These men left and police arrived. Bridewell and Rhodes approached the police and told them that Chandler had shot at them. (They did not know his name yet, but we use names to simplify the story.) Two detectives, Kevin Eberle and Brian Forberg, found Chandler dead, with a gun near his hand. They concluded that he had been shot three times. They also learned from the witness that two men had accompanied Rhodes and Bridewell, something they had not volunteered. They took Bridewell and Rhodes into custody, then located and arrested Manuel and Watkins.

After extended interrogation, both Rhodes and Watkins told the police that Bridewell had shot Chandler. (Manuel invoked his rights under *Miranda* and was not questioned further.) Bridewell was charged with murder. She was already under indictment for possession of cocaine with intent to distribute. Rhodes, Manuel, and Watkins were released.

After three years in custody, Bridewell pleaded guilty to a reduced drug charge (possession only) and was sentenced to time served; prosecutors dismissed the murder charge by filing a *nolle prosequi*. More than a year earlier, Bridewell, Rhodes, and Manuel had filed this suit against Eberle, Forberg, and the City of Chicago under 42 U.S.C. §1983, contend-

ing that their arrests were unlawful. None of the plaintiffs contended that the interrogations had been coercive or otherwise improper, though Bridewell raises this subject indirectly under state law (we return to the issue at pages 7–8). Bridewell added three claims unique to her: that the police took longer than the fourth amendment allows to present her to a judge, that the murder charge constituted malicious prosecution, and that the defendants tortiously caused her to suffer emotional distress. The district judge granted summary judgment to all three defendants on all four claims. 2012 U.S. Dist. Lexis 88671 (N.D. Ill. June 27, 2012).

The district court found that Eberle and Forberg had probable cause to believe that Bridewell, Rhodes, and Manuel either shot Chandler or aided the killer. Police found a dead body and learned from the witness plus Bridewell and Rhodes that Chandler had been pursued, trapped, and confronted by people who were angry with him. Multiple shots were heard. The witness saw Bridewell and her companions run away. One inference was that one or more of them had shot Chandler. It was not the only possible inference. Perhaps the two men who came to the alley later had fired the fatal shots and were strangers to the quartet. Perhaps Chandler shot himself, intentionally or by accident when trying to harm or scare his pursuers. The police thought this unlikely; they saw three holes in Chandler's head, implying that at least two of the shots had been fired by someone else.

A medical examination revealed only two holes, made by a single bullet. But probable cause is not determined by retrospect. It depends on what the police know, or reasonably believe, at the time. And probable cause is a standard, not a rule. See *Illinois v. Gates*, 462 U.S. 213 (1983). When facts sup-

port a "fair probability" that a suspect has committed a crime, probable cause to arrest exists. 462 U.S. at 238. The Court described a "commonsense, practical" inquiry, 462 U.S. at 230, into the question whether the circumstances "warrant suspicion" justifying detention. 462 U.S. at 235. The district judge thought that this standard had been met; we do too.

There was no dispute in the district court about what Eberle and Forberg knew or reasonably believed at the time. Plaintiffs contend that a jury should make an independent assessment of probable cause, no matter how things appeared to the officers at the scene. They observe that the witness who heard shots and saw plaintiffs run away did not tell the officers that plaintiffs had fired guns; perhaps a jury would treat this as reducing the likelihood that any of the plaintiffs shot Chandler (or assisted the shooter). Similarly, plaintiffs contend, a jury might attach significance to the fact that Chandler was very drunk; this might make it more likely that he shot himself accidentally. Plaintiffs' position is wrong for at least two reasons.

First, it proceeds as if the police had to use the rules for summary judgment and draw inferences in favor of the suspects. They don't. See, e.g., *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432 (7th Cir. 1986); *Askew v. Chicago*, 440 F.3d 894 (7th Cir. 2006). The summary-judgment rules affect what knowledge the district court can impute to the police, not whether a given set of facts supplies probable cause. And in this suit there is no dispute about what the police knew (or inferred, albeit incorrectly, from the condition of Chandler's head). Chandler's head was a mess; a single bullet fired from close range (as this one was) can cause extensive damage.

Plaintiffs do not deny that it was reasonable for the detectives to have thought that Chandler had been hit with multiple rounds. And the police did not know how much alcohol was in Chandler's blood; he was dead when they arrived, and his blood alcohol was tested only after plaintiffs were in custody. Whether the known facts add up to probable cause is a legal question for the judge, not a subject on which jurors are entitled to form their own opinions.

Second, the contention that, if the witness did not relate seeing any of the group fire a gun, then they cannot have done so, treats memory as if it were a movie made by a well-positioned camera. Yet things happen without being seen. A witness may not have a clear view of an entire alley. The focus of vision is fairly small; events in the periphery regularly are missed. And memory often does not record unexpected or unusual events. See Christopher Chabris & Daniel Simons, *The Invisible Gorilla: How Our Intuitions Deceive Us* (2010) (describing findings of psychological research). Police are entitled to draw on eyewitness descriptions without being required to assume that witnesses got every detail right, or that every omission from a description must establish that the omitted fact did not occur.

Now we take up the three claims advanced by Bridewell alone, starting with her contention that the police waited too long to present her to a court. *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), holds that the fourth amendment allows no more than 48 hours for the police to get a magistrate's approval of a suspect's continued detention. The delay for Bridewell was 63 hours, and she maintains that this entitles her to damages. The district judge held otherwise, ruling that because Bridewell is a member of the class in

*Dunn v. Chicago*, 231 F.R.D. 267 (N.D. Ill. 2005), which dealt (in a settlement) with Chicago's repeated violation of *Riverside*'s rule, her exclusive remedy comes through that litigation.

We need not decide whether Bridewell has adequately demonstrated that her claim differs from the one resolved in *Dunn*, because she cannot show injury. The state judge concluded that probable cause existed to find that she had shot Chandler and ordered her to be held—and also revoked her bail on the drug-distribution charge. The Supreme Court observed in *Riverside* that the reason for requiring suspects in custody to be taken before a magistrate promptly is to ensure that detention based on "incorrect or unfounded suspicion" is short-lived, 500 U.S. at 52, and that persons properly arrested but entitled to bail can be released promptly. Events showed that Bridewell had been arrested properly and was not entitled to release on bail. If the police had complied with *Riverside*, she would have learned these things a little sooner but would have remained in jail. This means that she was not injured by the delay.

What's more, Bridewell cannot receive damages for time spent in custody on a valid sentence. See *Ramos v. Chicago*, 716 F.3d 1013, 1019–20 (7th Cir. 2013). She received credit, against her sentence for possessing cocaine, for every hour she spent in custody following her arrest on the charge of murder. Defendants pointed this out in their appellate brief, and Bridewell's reply brief ignores the subject. The reply brief does maintain that Manuel and Rhodes are entitled to damages for unreasonably long detention short of 48 hours, but the opening brief does not make any such contention— and it does not appear to have been advanced in the district

court either, where only Bridewell sought damages for ex-
cessive delay.

Bridewell next contends that she is a victim of malicious
prosecution. Like the district judge, we put to one side the
question whether Eberle, Forberg, or the City of Chicago can
be amerced on account of charges filed by the State's Attor-
ney of Cook County, an official of a different public body.
See *Ramos*, 716 F.3d at 1019–20. The tort of malicious prose-
cution under Illinois law includes among its elements a
demonstration that the assertedly wrongful prosecution
terminated in the plaintiff's favor in a manner implying in-
nocence. See, e.g., *Swick v. Liautaud*, 169 Ill. 2d 504, 512–13
(1996). A prosecutor's dismissal of a criminal charge *may*
imply innocence, but *Swick* added that it does not do so
when it is part of a plea bargain. Bridewell struck a plea bar-
gain, and the district judge concluded that this forecloses a
malicious-prosecution claim.

Bridewell contends that although dismissal as part of a
bargain usually fails to imply innocence, it did so in her situ-
ation because the prosecutor was certain to abandon the
murder charge eventually no matter what happened to the
drug charge. She tells us that the evidence was weak—that
Rhodes and Watkins implicated her only because of improp-
er interrogation, that her hands tested negative for gunshot
residue (though the test was not performed until after she
had washed her hands), that her DNA and fingerprints were
not found on the gun, and that Chandler's death from one
shot fired at close range is best understood as suicide rather
than murder. Yet the medical examiner classified the death
as homicide initially and after a reexamination, and Bride-
well was in position to have shot Chandler from less than a

foot away and dropped the gun into the car. Rhodes and Watkins had no reason to make false charges against Bridewell; Rhodes is Bridewell's sister, and there is no suggestion of bad blood between them.

We therefore cannot say that the murder charge was doomed from the outset—and, more to the point, we could not find any Illinois case holding that it is proper to look past the form of a plea bargain to inquire what would have happened had a compromise not been reached. Federal courts asked to rule on claims arising under state law must take it as it exists. State courts have the prerogative of innovating on common-law subjects, but federal courts do not. Bridewell could have filed this suit in state court but chose a federal forum and did not ask the district judge to relinquish supplemental jurisdiction, 28 U.S.C. §1367(c)(3), after resolving her two claims under federal law.

Bridewell asserts that a memo in the prosecutor's files shows that dismissal of the murder charge was inevitable because the evidence was weak. The Assistant State's Attorney who wrote the memo concluded that the failure of police to obtain DNA from the gun, and to test Bridewell's hands for residue before she washed them, undermined the strength of the evidence. This assistant also was skeptical of Rhodes's accusation against Bridewell, observing that the video of the interrogation showed that the officer had been "cross-examining" Rhodes for about four hours before she told the officer that Bridewell had shot Chandler. Yet convictions have been obtained on weaker evidence (Rhodes was an eyewitness, after all)—and, in the end, the assistant's doubts about the strength of the prosecution's case can not overcome the absence of any Illinois authority for the propo-

sition that the dismissal of charges in an apparent plea bargain implies the defendant's innocence.

As for Bridewell's claim that Eberle and Forberg intentionally inflicted emotional distress by arresting her and recommending her prosecution for murder: the district judge dismissed this as barred by the one-year period of limitations Illinois uses for claims of this sort. 745 ILCS 10/8-101. Bridewell was arrested on September 3, 2006, and did not sue until August 29, 2008. We held in *Evans v. Chicago*, 434 F.3d 916, 934 (7th Cir. 2006), that a claim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of the arrest.

Bridewell does not contend that any state court has understood the accrual time differently—Illinois applies the standard rule that a claim accrues when the victim first suffers injury and knows its cause—but insists that her claim accrued anew every day the detectives did not tell the prosecutors to dismiss the indictment because the statements by Rhodes and Watkins were unreliable and DNA evidence was unavailable. If Bridewell is right, however, then *Evans* must be wrong. The tort of intentional infliction of emotional distress either is a continuing wrong (as she contends) or is not (as *Evans* held). The idea that failing to reverse the ongoing effects of a tort restarts the period of limitations has no support in Illinois law—or in federal law either. See, e.g., *Wallace v. Kato*, 549 U.S. 384 (2007); *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007); *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110–15 (2002). See also *Turley v. Rednour*, No. 11-1491 (7th Cir. July 3, 2013), slip op. 16–18 (concurring opinion distinguishing three different senses of "continuing violation").

Although the detectives did not submit the gun for full forensic testing until too late to collect DNA, and became reluctant to cooperate with the prosecutors once they were defendants in this suit (which, recall, Bridewell filed more than a year before the murder charge was dismissed), it is hard to see how these events could constitute a new malicious prosecution, when the prosecution was already under way. And some of the events to which Bridewell points, such as the lack of proper and prompt forensic testing, occurred more than a year before she filed suit.

Even if we were to suppose that a new claim could in principle be based on events after the initial injury, Bridewell's claim would fail because she does not contend that the detectives' ongoing failure to alert the prosecutor to the potential shortcomings in the evidence was motivated by a freshly formed intention to cause emotional distress. A truly new claim arising from inaction requires proof of each element of the tort on each day the supposedly new claim arises. Bridewell wants to treat the (allegedly) bad intent with which the prosecution began as extending to all later inaction. Yet if the initial intent carries forward, so does the initial date of the claim's accrual.

AFFIRMED

WOOD, *Circuit Judge*, concurring in the judgment. I agree with my colleagues that Officers Kevin Eberle and Brian Forberg had probable cause to arrest each of the plaintiffs— Sara Bridewell, Randy Manuel, and Lisa Rhodes—for the murder of Walter Chandler. Even though the plaintiffs offer a plausible account of the events that unfolded on September 3, 2006, their account does not detract from the objective reasonableness of the inferences that the officers drew from the information available to them when they arrived on the scene. The fact that the plaintiffs, especially Rhodes, were subjected to a grueling and humiliating 40-hour interrogation *after* their arrest is deeply disturbing. Probable cause, however, depends on what the police knew at the time of the arrest, not on anything that happened later. For the same reason, the post-arrest discovery that Chandler had been extremely drunk at the time he died neither adds nor detracts from the objective reasonableness of the actions of the police.

I also agree with the majority that Bridewell's state-law claims for malicious prosecution and intentional infliction of emotional distress were properly dismissed. Nevertheless, I find both of these to be closer calls than one might think based on the majority's opinion. The majority sees the disposition of the malicious-prosecution claim as straightforward: the prosecution dismissed the murder charges with a *nolle prosequi* motion, as part of a bargain in which Bridewell pleaded guilty to unrelated drug and gun possession charges. In *Swick v. Liautaud*, 662 N.E.2d 1238 (Ill. 1996), the Supreme Court of Illinois held without apparent qualification that "[t]he abandonment of the proceedings is not indicative of the innocence of the accused when the *nolle prosequi* is the result of an agreement or compromise with the accused,

misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to trial." *Id.* at 1243. It is not clear, however, if the court meant to prevent the plaintiff from rebutting the inference that arises in those situations, or if it meant to create an absolute rule. Bridewell has offered evidence that she believes would rebut the inference that the dismissal of her murder charges did not signify innocence because it was part of her plea bargain. Her most important source is the note written by Assistant State's Attorney Popielewski stating that "after consultation with the State's Attorney … it was determined that the State could not sustain its burden of proof in this case." But as we recently noted in *Pulungan v. United States*, No. 12-2595, 2013 WL 3455514 (7th Cir. July 10, 2013), a decision that guilt has not been (or cannot be) proved beyond a reasonable doubt is not the same as a decision that the person did not commit a crime. *Id.* at *2. I would therefore find not that Bridewell was categorically barred from showing that her *nolle prosequi* reflected her innocence, but instead that she failed to overcome the contrary presumption that arises from the plea bargain.

Bridewell's claim for intentional infliction of emotional distress also presents a much closer call for me than it does for the majority. The district court thought that this claim was time-barred, because it understood her to be contending that all of the offensive actions took place no later than the day when she was charged. That date was more than one year before she filed suit, and so if her claim was limited in this way, it would indeed have been barred under 745 ILCS 10/8-101 (2003). The district court rejected the possibility that

her ongoing imprisonment somehow made this a continuing wrong, relying on *Evans v. City of Chi.*, 434 F.3d 916, 934 (7th Cir. 2006).

I have no quarrel with the district court's analysis, as far as it goes. But there is more to Bridewell's allegations: she asserts that the police committed several allegedly tortious actions after she was charged, and that these actions independently amounted to intentional infliction of emotional distress. Specifically, she states that the detectives failed to disclose to the prosecutors that Rhodes's and Watkins's statements implicating her were coerced and false. These were the statements elicited as a product of Rhodes's 40-hour interrogation, during which the detectives threatened her by telling her that she would never see her children again, screamed at her, denied her bathroom breaks, subjected her to a biased polygraph examination, lied to her about the results, and were otherwise abusive. Only after that ordeal did Rhodes give a statement against Bridewell, her sister; she later repeated that statement to the grand jury. But these events were known to the prosecutors either before her indictment or shortly thereafter. Any claim based on them is thus also time-barred. Bridewell also argues that the DNA samples gleaned from the gun that was recovered were not sent for testing until 2009. Finally, she complains that Officer Forberg refused to discuss her case with the prosecutors because this civil case was pending. Even if the officers were responsible for the late DNA testing and were uncooperative with the prosecutors, however, those two actions are not enough to amount to the outrageous conduct that Illinois requires for this tort. See, *e.g., Duffy v. Orlan Brook Condo. Owners' Ass'n*, 981 N.E.2d 1069, 1079 (Ill. App. 2012) ("extreme and outrageous behavior requires conduct that goes beyond

all possible bounds of decency, such that a reasonable person would hear the facts and be compelled to feelings of resentment and outrage"), citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201 (Ill. 1992). I thus concur in the decision to affirm the dismissal of this claim.

My final reservation relates to the majority's discussion of *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991). Bridewell complains that the police waited too long to present her in court for a probable-cause hearing: *Riverside* holds that the hearing should have taken place within 48 hours, but Bridewell's hearing did not occur until she had been detained for 63 hours. No harm, no foul, my colleagues argue: the purpose of the *Riverside* rule is to ensure that the innocent are not detained any longer than is absolutely necessary.

But *Riverside* is concerned not only with the obviously innocent, but also with those who might be entitled to bail. (It is worth recalling, in this connection, that in the federal courts, the Bail Reform Act requires the pretrial release of a person, upon proper security, *unless* the judicial officer determines that the person will not show up as required or that he will endanger others in the community. See 18 U.S.C. § 3142(b); see also *People ex rel. Hemingway v. Elrod*, 322 N.E.2d 837, 840–41 (Ill. 1975) (discussing the qualified constitutional right to bail under Illinois law and noting that "the object of bail … is to make certain the defendant's appearance in court and is not allowed or refused because of his presumed guilt or innocence"). And even a person who would not be entitled to release, as my colleagues assert Bridewell was, is entitled to the orderly procedure provided by a hearing pursuant to *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975). One could have said much the same thing about the

student in *Carey v. Piphus*, 435 U.S. 247 (1978), who was suspended without due process from his public school for possession of marijuana. Rather than holding that the existence of a factual justification for the suspension and the absence of any tangible injury defeated his claim altogether, the Supreme Court ruled that "if … respondents' suspensions were justified, respondents nevertheless will be entitled to recover nominal damages not to exceed one dollar from petitioners," *id.* at 267, because "the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions," *id*. In addition, *Carey* recognized that damages for emotional distress attributable to the deficiencies in procedure are possible, if the person can "convince the trier of fact that he actually suffered distress because of the denial of procedural due process itself." *Id.* at 263; see also *Alston v. King,* 231 F.3d 383, 386 (7th Cir. 2000); *Laje v. R.E. Thomason Gen'l Hosp.,* 665 F.2d 724, 728 (5th Cir. 1982).

Bridewell has not explained, however, what emotional damages apart from the natural distress flowing from her detention she may have suffered as a result of the fifteen extra hours that elapsed before her *Gerstein* hearing. With respect to the detention itself, as a practical matter she is the beneficiary of the *Dunn* litigation, which dealt with the City's careless application of *Riverside*. See *Dunn v. City of Chi.*, 231 F.R.D. 367 (N.D. Ill. 2005). The *Dunn* court cut off the class definition as of the date of its order, October 5, 2005 (eleven months before the events here), but as my colleagues point out, putting nominal damages to one side, Bridewell cannot recover anything for time spent in custody that was credited to a lawful sentence. I agree with them that Manuel and Rhodes failed properly to preserve their arguments by

omitting them from their opening brief. Thus, in the end there is a chance that Bridewell might be entitled to a *Carey*-like remand for nominal damages. But that is sufficiently in doubt that I will not dissent from the across-the-board affirmance that my colleagues favor.

With these reservations, I concur in the decision to affirm the judgment of the district court.