In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1351

CHARLES S. HOWLETT,

*Plaintiff-Appellant,*

*v.*

JEFFREY HACK, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:12-cv-00475-TWP-MJD — **Tanya Walton Pratt**, *Judge.*

ARGUED JANUARY 7, 2015 — JULY 21, 2015

Before WOOD, *Chief Judge*, and POSNER and EASTERBROOK, *Circuit Judges*.

WOOD, *Chief Judge*. In the early hours of October 25, 2009, the Indianapolis Metropolitan Police Department received a 911 call reporting that someone had broken into Jeffrey Hack's house. Officer Steven Beasley responded to the call and eventually arrested Hack's neighbor, Charles Howlett. Howlett was later charged with a variety of offenses related to the alleged break-in, but a jury ultimately acquitted him.

He then filed this suit, alleging false arrest and malicious prosecution on the part of Beasley, the City of Indianapolis, Hack, and several others. The district court granted summary judgment to all of the defendants. Howlett now appeals, though only with respect to Beasley, the City, and Hack. We affirm the district court's resolution of all claims against Beasley and the City as well as the federal malicious-prosecution claim against Hack. We conclude, however, that the court should have relinquished supplemental jurisdiction over the state-law claims against Hack, and so we remand for that limited purpose.

## I

On October 25, 2009, the Indianapolis Police received a call about a break-in and assault at 418 South Butler Avenue. Officer Beasley was quickly dispatched to the scene and spoke to Jeffrey Hack, the alleged victim of the assault. Hack told Beasley that he had been asleep in his home when his neighbor, Charles Howlett, woke him up suddenly, grabbed and threatened him, and eventually thrust a hand down the front of Hack's pants. Hack guessed that Howlett had entered the house by prying open a bathroom window, and he told Beasley that Howlett did not have permission to enter the home (through the window or otherwise). After Hack punched Howlett, Howlett quickly left through the bathroom window. Hack described Howlett as rather tall and wearing a white t-shirt and tan pants.

Beasley then walked across the street to Howlett's home, but Howlett did not answer the door. After an unidentified person gave Beasley Howlett's cell phone number, Beasley called and the two spoke briefly. Howlett promised to return home. Beasley recalls that Howlett also added, without

prompting, that he did not enter Hack's bathroom or "g[e]t into his neighbor's pants," though Howlett now says that he never made these statements. When Howlett returned to his home and met Beasley, he denied breaking into Hack's house. Howlett was wearing a tan collared shirt, not a white t-shirt. Nevertheless, Hack identified Howlett as the person who had entered his home and assaulted him. Beasley, who had never met either man before, arrested Howlett for the offenses of residential entry and invasion of privacy. A few days later, the Marion Superior Court determined that there was probable cause for the arrest, and Howlett was formally charged with burglary, criminal confinement, residential entry, intimidation, and battery. After a jury trial held on April 14, 2010, he was acquitted of all charges.

Howlett then filed this suit under 42 U.S.C. § 1983 in the district court, alleging that Beasley, the City of Indianapolis, Hack, and three other people violated his rights under the Fourth and Fourteenth Amendments to the Constitution by arresting and maliciously prosecuting him; he also asserted the latter two theories as free-standing state-law claims. (Howlett also alleged that Beasley withheld exculpatory evidence, that Hack and the others retaliated against him, and that all the defendants were engaged in a conspiracy, but he does not pursue these claims on appeal.) The district court had jurisdiction over Howlett's federal claims under 28 U.S.C. § 1331; his state-law claims fell within the court's supplemental jurisdiction. 28 U.S.C. § 1367.

The court granted summary judgment to all the defendants on the false-arrest allegations, finding that the two-year statute of limitations in Indiana Code § 34-11-2-4 barred these claims. It granted summary judgment to the defend-

ants on Hack's state-law malicious-prosecution claims be-
cause 1) Hack had not established that there was a lack of
probable cause, 2) the civilian defendants did not initiate a
prosecution or cause one to be started, and 3) Beasley and
the City had absolute immunity under Indiana Code § 34-13-
3-3(6). The court also found that Hack's malicious-
prosecution claim under § 1983 had to be dismissed: it failed
on the merits with respect to all defendants, and with respect
to the civilians, it was also barred because an adequate rem-
edy exists under state law. Hack has appealed the district
court's decision in favor of Beasley, the City, and Hack, only
with regard to his malicious-prosecution claims (under both
federal and state law) and false-arrest claims (under state
law).

## II

### A

Because this appeal comes to us from a grant of summary
judgment, we take a fresh look at the case, construing all
facts and reasonable inferences in favor of the nonmoving
party. See *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th
Cir. 2015). We begin with Howlett's claims against Officer
Beasley and the City.

*False Arrest*

Under Indiana law, a false-arrest claim accrues once the
complaining party is detained pursuant to legal process,
such as an arraignment. See *Johnson v. Blackwell*, 885 N.E.2d
25, 30–31 (Ind. Ct. App. 2008) (citing *Wallace v. Kato*, 549 U.S.
384 (2007)). Howlett filed this lawsuit on April 11, 2012, ap-
proximately two and a half years after his October 28, 2009,
arraignment. The district court noted that Indiana's statute

of limitations for personal injury tort claims requires suits to be filed within two years after the cause of action accrues. See IND. CODE § 34-11-2-4(a). A quick look at the relevant dates convinced it that Howlett's false-arrest claim was time-barred.

Howlett argues that a different statute of limitations, which governs actions against public officers and sets a five-year limitations period, should apply. See IND. CODE § 34-11-2-6 ("An action against: (A) a sheriff; (B) another public officer; or (C) the officer and the officer's sureties on a public bond; growing out of a liability incurred by doing an act in an official capacity, or by the omission of an official duty, must be commenced within five (5) years after the cause of action accrues."). Beasley is certainly a public officer for this purpose. Indiana defines a public officer as an "individual [who] holds a position for which duties are prescribed by law to serve a public purpose," and the taking of an oath, while not required, "is a strong indicator" of a person's status as a public officer. *Barrow v. City of Jeffersonville*, 973 N.E.2d 1199, 1204 (Ind. Ct. App. 2012); see also *Blake v. Katter*, 693 F.2d 677, 680 (7th Cir. 1982) (finding that police officers are public officers and applying § 34-11-2-6's predecessor statute to claims of civil rights violations against police officers). Beasley's duties are prescribed by the Indiana Code at section 5-2-1-17; they include serving public purposes such as "preserv[ing] the peace, maintain[ing] order, and prevent[ing] the unlawful use of force or violence." IND. CODE § 5-2-1-17(b)(1). Beasley is required by Indiana law to "take an appropriate oath of office." IND. CODE § 5-2-1-17(c)(1). Finally, Beasley was acting in an official capacity when he arrested Howlett.

The argument that the public-officer statute applies is thus not a frivolous one. Both this statute and the general tort statute appear to apply to facts before us. Howlett urges that the former, § 34-11-2-6, is meant to encompass *all* actions against public officers acting in their official capacity, while the latter, § 34-11-2-4, applies to all other personal injury suits (*i.e.*, those taken against non-public officers). The language of § 34-11-2-6 is broad, and there is no hint that its wide coverage should be curtailed by shorter statutes of limitations provided for specific types of claims. Rather, § 34-11-2-6 might have been meant to create a uniform statute of limitations for all suits—including those for personal injury claims—when those suits are filed against public officers.

We acknowledge that at least two decisions have applied the two-year statute of limitations to false-arrest actions brought against police officers. See *Serino v. Hensley*, 735 F.3d 588, 591 (7th Cir. 2013); *Johnson*, 885 N.E.2d at 30. Neither of these cases, however, discussed the possible applicability of the five-year limitations period; rather, the courts simply assumed that the two-year personal injury statute was applicable. And although we have recognized that *Wilson v. Garcia*, 471 U.S. 261 (1985), overruled our 1982 decision in *Blake*, to the extent that *Blake* looked to Indiana's five-year statute of limitations for a *federal* § 1983 claim, see *Coopwood v. Lake Cnty. Cmty. Dev. Dep't*, 932 F.2d 677, 679 (7th Cir. 1991), we have suggested that the five-year statute might be the right one to use for state-law claims. See *Campbell v. Chappelow*, 95 F.3d 576, 580 n.4 (7th Cir. 1996). Fortunately, we do not have to resolve this issue, because Howlett's state-law claim, even if we assume for the sake of argument that it is not time-barred, cannot withstand summary judgment.

For a claim of false arrest to succeed under Indiana law, there must be an "absence of probable cause." *Row v. Holt*, 864 N.E.2d 1011, 1016 (Ind. 2007). Howlett therefore had to raise a genuine issue of fact on the question whether Beasley had probable cause to arrest him. He has not done so. An officer has probable cause for an arrest when "at the time of the arrest the facts and circumstances within the knowledge of the officer[] and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man of reasonable caution in believing that the arrestee had committed or was committing an offense." *Smith v. State*, 271 N.E.2d 133, 136 (Ind. 1971); see also *Riggenbach v. State*, 397 N.E.2d 953, 954–55 (Ind. 1979).

It is undisputed that Hack, the alleged victim, positively identified Howlett as his assailant. Beasley was entitled to rely on this identification. See *Capps v. State*, 229 N.E.2d 794, 796 (Ind. 1967) ("A police officer may base his belief that there is reasonable and probable cause for arresting a person on information received from another."); see also *Askew v. City of Chicago*, 440 F.3d 894, 895 (7th Cir. 2006) ("[A]llegations by eyewitnesses supply probable cause when the statements, if true, show that a crime has occurred."). There could be a problem if a reasonable officer would have known that the accuser is acting out of malice or because of a grudge. See *Askew*, 440 F.3d at 895. But there is no indication that Beasley knew or should have known that Hack made his accusations because he harbored ill will toward Howlett.

The discrepancies about the color and type of shirt Howlett was wearing at the time of the incident do not create a question of material fact for probable-cause purposes. These are minor details that can be disregarded. *Id.* at 896 (discuss-

ing discrepancies in the type of weapon the alleged assailant was wielding). In any case, as we have noted, Beasley did not arrest Howlett solely on Hack's description. Whether the alleged criminal was wearing a tan, collared shirt or a white t-shirt at the time of the break-in is too insignificant to negate the conclusion that, taking into consideration all that was known to Beasley, Beasley had probable cause to arrest Howlett. The district court was correct to grant summary judgment to Beasley, and to the City as Beasley's employer, on this claim.

*Malicious Prosecution*

Indiana law recognizes the tort of malicious prosecution. See, *e.g.*, *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378–79 (Ind. 2001). The Indiana Tort Claims Act, however, shields government employees such as Beasley and entities such as the City from these claims. See IND. CODE § 34–13–3–3(6) ("A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from … [t]he initiation of a judicial or an administrative proceeding."); see also *Serino*, 735 F.3d at 595. As a result, Howlett's state-law malicious-prosecution claim against Beasley and the City necessarily fails.

Howlett also alleged a federal claim of malicious prosecution, based on his Fourth Amendment rights. Such a claim is not actionable if there is an adequate state-law remedy. *Newsome v. McCabe*, 256 F.3d 747, 750–51 (7th Cir. 2001). Because the Indiana Tort Claims Act immunizes governmental entities and their employees from malicious-prosecution suits, there is no adequate state remedy and Howlett is entitled in principle to pursue his federal claim. See *Julian v. Hanna*, 732 F.3d 842, 845–49 (7th Cir. 2013). Nevertheless,

"[f]ederal courts are rarely the appropriate forum for mali‐
cious prosecution claims" because there is no "federal right
not to be summoned into court and prosecuted without
probable cause." *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th
Cir. 2011) (quoting *Tully v. Barada*, 599 F.3d 591, 594 (7th Cir.
2010)). Thus, in a § 1983 malicious‐prosecution suit, the
"plaintiff must allege a violation of a particular constitution‐
al right, such as the right to be free from unlawful seizures
under the Fourth Amendment, or the right to a fair trial un‐
der the Due Process Clause." *Welton v. Anderson*, 770 F.3d
670, 673 (7th Cir. 2014) (quoting *Serino*, 735 F.3d at 592) (al‐
teration and quotation marks omitted).

Howlett cannot rely on his allegedly unlawful seizure,
not only because the arrest was proper (because it was sup‐
ported by probable cause) but also because a warrantless ar‐
rest "cannot serve as the basis for a malicious prosecution
action." *Serino*, 735 F.3d at 593–94 (explaining that a mali‐
cious prosecution must involve "a deprivation of liberty *pur‐
suant to legal process*" and that a person who has been arrest‐
ed without a warrant is subject to legal process only once he
is arraigned). Howlett does not allege any post‐arraignment
constitutional violation. His complaints against Beasley deal
primarily with alleged falsehoods and a failure to investigate
that occurred before the arraignment, and even before the
arrest. Even if we understood Howlett to be alleging that
Beasley lied or withheld evidence in order to have Howlett
charged (thus perhaps implicating the due process right to
fair proceedings), nothing in the present record would allow
such allegations to withstand summary judgment. Howlett
has not shown either a lack of probable cause or the presence
of malice, both of which are necessary for an Indiana mali‐
cious‐prosecution claim. See *Welton*, 770 F.3d at 674 (even if

plaintiff has properly pleaded a constitutional violation, he still must show the elements of a state-law claim, which under Indiana law includes malice and lack of probable cause). We already have explained why probable cause existed here. A plaintiff may show malice through "evidence of personal animosity … a complete lack of probable cause or a failure to conduct an adequate investigation." *Id*. (quoting *Golden Years Homestead, Inc. v. Buckland*, 557 F.3d 457, 462 (7th Cir. 2009)). Howlett showed nothing of the kind. Finally, Beasley's investigation was adequate: he spoke with both the victim and the accused, and he had the victim identify his assailant in person. Summary judgment was thus appropriate on this claim.

B

Next, we address Howlett's claims against Hack. The only *federal* claim against Hack is for malicious prosecution. Unlike Beasley and the City, Hack is not immune from a state-law malicious-prosecution suit. Indiana Code § 34–13–3–3(6) immunizes only governmental entities and employees from these suits; for all other defendants, the state permits malicious-prosecution suits to proceed. See *Reichhart*, 748 N.E.2d at 378–79. But this poses an insurmountable problem for Howlett: because he is entitled to pursue his malicious-prosecution claim in state court, he has an adequate state-law remedy and may not proceed with his federal § 1983 claim. See *Newsome*, 256 F.3d at 750–51.

This resolves all of Howlett's federal claims. What remain are his state-law false-arrest and malicious-prosecution claims against Hack. In a situation like this one, where the state-law claims have not been the focus of the litigation, the better practice is for the district court to relinquish its juris-

diction over them. See 28 U.S.C. § 1367(c)(3); *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007) (describing the "presumption that if the federal claims drop out before trial, the district court should relinquish jurisdiction over the state-law claims"). The district court offered no reason for declining to dismiss the remaining supplemental claims. In our view, that is what should have happened. Once the judgment is revised to show that these claims were dismissed without prejudice, Howlett will be free to seek to pursue them in state court.

### III

We conclude with a few words about Howlett's request that we certify two state-law issues to the Indiana Supreme Court. He would like us to ask that court to rule on whether § 34-11-2-4 or § 34-11-2-6 governs the statute of limitations for false-arrest claims against police officers, and on whether the filing of a criminal case by a prosecutor effectively bars a malicious-prosecution claim against persons (including police officers) who supplied information that led to the prosecution. These questions do not, however, meet the criteria for certification found in Circuit Rule 52.

The present case does not turn on the answers to either of those questions. See *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001). The statute of limitations question is not dispositive, because Howlett's false-arrest claim against Beasley and the City fails because probable cause supported the arrest, and because we are directing the district court to relinquish jurisdiction over the claim against Hack. We were able to resolve most of the malicious-prosecution claims without having to delve into the issue of whether persons who supply information to a prosecutor

can be liable for malicious prosecution. Finally, we have ensured that Howlett may pursue his remaining state-law claims against Hack in state court. We see no reason to burden the Indiana Supreme Court with such matters, and we therefore deny Howlett's request for certification.

## IV

In summary, we conclude that even if Howlett's state-law false-arrest claim against Beasley and the City is timely, it was properly dismissed because Beasley had probable cause to arrest Howlett. Beasley and the City are immune from Howlett's state-law malicious-prosecution claim. Howlett's § 1983 malicious-prosecution claim against Beasley and the City cannot survive summary judgment because Howlett did not allege a separate constitutional injury and, even if he did, he has not submitted evidence that Beasley acted out of malice or lacked probable cause. Howlett cannot maintain his § 1983 malicious-prosecution claim against Hack because Howlett has an adequate state remedy. Finally, we decline to certify any questions to the Indiana Supreme Court.

We therefore AFFIRM the judgment of the district court granting summary judgment to the defendants in all respects but one. We REMAND the case to the district court with instructions to change the dismissal of Howlett's state-law claims against Hack to one without prejudice, so that he may pursue them in state court.