

**FILED**
Dec 11 2015, 9:29 am
CLERK
of the supreme court,
court of appeals and
tax court

| | |
|---|---|
| APPELLANT, *PRO SE* | ATTORNEY FOR APPELLEE |
| Jason J. Maraman | Ashley M. Ulbricht |
| Indianapolis, Indiana | Carmel Assistant City Attorney |
| | Carmel, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jason J. Maraman, | December 11, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 29A05-1504-OV-145 |
| v. | Appeal from the Hamilton Superior Court |
| City of Carmel, Indiana, | The Honorable Wayne Sturtevant, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 29D05-1410-OV-8818 |

**May, Judge.**

[1] Jason Maraman challenges his citation for speeding. As the Carmel city ordinance under which Maraman was ticketed was void, the trial court should have granted Maraman's motion to dismiss. We must accordingly reverse.[1]

## Facts and Procedural History

[2] Maraman was stopped for speeding in Carmel. The complaint and summons issued to Maraman indicated he was driving 30 miles per hour when the speed limit was 20,[2] "[c]ontrary to the form of the . . . Local Ordinance in such case made and provided. L.O. No. 8-2."[3] (Appellant's App. at 10.) The Carmel City Court entered judgment against him and he asked for a trial *de novo*.

[3] When the cause was moved before the trial court, Maraman filed a motion to dismiss that alleged, in pertinent part:

---

[1] As we reverse on that ground, we need not address Maraman's argument the trial court erred in denying his jury demand.

[2] The Complaint and Summons indicates the "vehicle speed" was "30" and the *prima facie* speed" where Maraman was stopped was "20." Both numbers appear incorrect. Ind. Code § 9-21-8-53 provides that in every charge of violation of a speed regulation, the complaint "must specify the following: (1) The speed at which the defendant is alleged to have driven. (2) The *prima facie* or fixed speed applicable within the district or at the location."

There was evidence the officer clocked Maraman "at a speed of thirty-five (35) miles per hour in a posted twenty (20) miles per hour zone [sic] construction zone." (Br. of Appellee at 4.) The officer testified he "wrote [Maraman] for 30 in a 20 mile per hour" instead of "35 in a 20" because he "tried to be compassionate due to the area." (Tr. at 17.) The area where Maraman was driving was a construction zone, but the officer did not "cite this in a construction zone" because of "[a]gain, compassion." (*Id.*)

Nor does it appear the "prima facie" speed at that location was twenty miles per hour. There was testimony the normal speed limit in the area, *i.e.*, the "*prima facie*" speed, was thirty miles per hour and not twenty as indicated on the Complaint and Summons. The speed limit had been reduced to twenty due to construction.

[3] That part of the complaint and summons included two boxes that could be checked – one for the applicable "State Statute" and one for the "Local Ordinance." (Appellant's App. at 10.) The "State Statute" box was not checked. The "Local Ordinance" box was.

## Failure to State a Claim Upon Which Relief Can Be Granted

12. The complaint in the above captioned matter alleged Defendant violated Carmel City Ordinance 8-2 which states:

> Unless otherwise provided herein, the provisions set forth in I.C.,[sic] 9-21-1-1 through 9-21-20-3 (Traffic Regulations) are adopted by reference and made a part of this chapter with the same force and effect as though set forth here verbatim. (Carmel City Ordinance 8-2)

13. The powers granted to and specifically withheld from a city are governed by I.C. 36-1-3, commonly referred to as the Home Rule Act.

14. The power to prescribe a penalty for conduct constituting a crime or infraction under statute is a power which is specifically withheld pursuant to I.C. 36-1-3-8(a)(8).

15. Carmel City Ordinance 8-2 simply incorporates by reference the portion of Indiana Code which defines motor vehicle infractions. Therefore, the ordinance is a prima facie violation of I.C. 36-1-3-8(a)(8) rendering the ordinance null and void. As such, the ordinance is unenforceable and fails to state a claim upon which relief may be granted. Thus the complaint should be dismissed.

(Appellant's App. at 16) (header bolded in original).

The trial court denied Maraman's motion to dismiss. Thereafter, the court found Maraman "did commit . . . the infraction of Speeding *under Carmel City Code 8-2*," (*id*. at 5) (emphasis added), and it entered judgment against him.

# Discussion and Decision

We review purely legal issues *de novo*, and an issue presented on appeal is a pure question of law when it does not require reference to extrinsic evidence, inferences drawn from that evidence, or the consideration of credibility questions. *Cunningham v. State*, 835 N.E.2d 1075, 1076 (Ind. Ct. App. 2005), *trans. denied*. This is such a question.

The trial court found Maraman violated "Carmel City Code 8-2." (App. at 5.) That portion of Carmel's Code provided that it "adopted by reference and made a part of this chapter with the same force and effect as though set forth here verbatim" chapters 1 through 20 of Indiana Code Article 9-21, which controls traffic regulations.[4] Carmel City Code 8-2. Included in the sections of the Indiana Code that Carmel asserts to have adopted through that ordinance are *numerous* statutes that define traffic infractions.[5]

---

[4] The only chapter of Article 9-21 that was not adopted was Chapter 21, which is entitled "Farm Vehicles Involved in Commercial Enterprises."

[5] *See, e.g.*, Ind. Code § 9-21-3-11 ("A person who violates section 7, 8, or 9 of this chapter commits a Class C infraction."); Ind. Code § 9-21-4-19 ("A person who violates section 4, 5, 6, 16, 17, or 18 of this chapter commits a Class C infraction."); Ind. Code § 9-21-5-1(b) ("A person who drives at a speed greater than is reasonable and prudent for the given weather or road conditions commits a Class C infraction."); Ind. Code § 9-21-5-2(b) ("A person who violates subsection (a) [setting speed limits on various kinds of highways and in urban districts] commits a Class C infraction."); Ind. Code § 9-21-5-4(b) ("A person who fails to drive at a reduced speed as required under subsection (a) commits a Class C infraction."); Ind. Code § 9-21-5-5(b) ("A person who operates [an oversized] vehicle to which subsection (a) applies at a speed greater than fifty-five (55) miles per hour commits a Class C infraction."); Ind. Code § 9-21-5-7(b) ("A person who fails to give right-of-way as required by subsection (a) commits a Class C infraction."); Ind. Code § 9-21-5-8.5(b) ("A person who operates a low speed vehicle on a highway that has a speed limit in excess of thirty-five (35) miles per hour commits a Class C infraction."); Ind. Code § 9-21-5-9(d) ("A person who violates this section commits a Class C infraction."); Ind. Code § 9-21-5-10(d) ("A person who exceeds the speed limit sign posted on a bridge or other elevated structure under this section commits a Class C infraction."); Ind. Code § 9-21-5-14(c) ("A person who knowingly or intentionally exceeds a speed limit set forth in subsection (a) or (b) [for

Maraman notes Indiana's "Home Rule" laws, found in Indiana Code Chapter 36-1-3, provide municipalities do "not have . . . [t]he power to prescribe a penalty for conduct constituting a crime or infraction under statute." Ind. Code § 36-1-3-8(a)(8). He also cites *Mitsch v. City of Hammond*, 234 Ind. 285, 125 N.E.2d 21 (1955), *reh'g denied*, in which our Indiana Supreme Court held an earlier version of our Home Rule law[6] meant that an Indiana city could not

---

buses] commits a Class C misdemeanor."); Ind. Code § 9-21-6-3 ("A person who violates this chapter [regarding speed contests] commits a Class B misdemeanor . . . ."); Ind. Code § 9-21-7-13 ("A person who violates this chapter [regarding vehicle equipment] commits a Class C infraction."); Ind. Code § 9-21-8-35 (defining Class A and Class B infractions related to emergency vehicles); Ind. Code § 9-21-8-49 ("Except as provided in [other sections] of this chapter, a person who violates this chapter commits a Class C infraction."); Ind. Code § 9-21-8-50 (creating Class B misdemeanor for reckless operation of tractor-trailer); Ind. Code § 9-21-8-51 (failing to dim lights for others is a Class B infraction); Ind. Code § 9-21-8-52 (creating misdemeanor reckless driving offenses); Ind. Code § 9-21-8-55 (defining misdemeanor aggressive driving); Ind. Code § 9-21-8-56 (defining misdemeanor reckless driving in work zone); Ind. Code § 9-21-8-58 (improper carrying of metal coils is a misdemeanor); Ind. Code § 9-21-9-7 ("A person who violates this chapter [regarding slow moving vehicles] commits a Class C infraction."); Ind. Code § 9-21-10-13 ("A person who violates this chapter [regulating motorcycles] commits a Class C infraction."); Ind. Code § 9-21-11-14 ("A person who violates this chapter [regulating bicycles and motorized bicycles] commits a Class C infraction."); Ind. Code § 9-21-12-1 (failing to heed school bus arm signal is a Class A infraction); Ind. Code § 9-21-12-5 (creating infraction and misdemeanor for failure to follow rules at railroad crossing); Ind. Code § 9-21-12-7 (creating infractions related to fire trucks); Ind. Code § 9-21-12-13 (failure to extend signal arm on school bus is a Class C misdemeanor); Ind. Code § 9-21-12-14 (school bus driver who knowingly fails to use turn signal commits Class C misdemeanor); Ind. Code § 9-21-12-15 (school bus driver's knowing failure to appropriately use flashing stop lights commits Class C misdemeanor); Ind. Code § 9-21-12-16 (creating Class C misdemeanors related to "prohibited area" of school bus); Ind. Code § 9-21-12-18 (creating Class C misdemeanor for operating bus with obstructed exits); Ind. Code § 9-21-13-7 ("A person who violates this chapter [regarding funeral processions] commits a Class C infraction."); Ind. Code § 9-21-14-8 ("A person who violates this chapter [regarding marching bands] commits a Class C infraction."); Ind. Code § 9-21-15-8 ("A person who violates this chapter [regarding disabled vehicles] commits a Class C infraction."); Ind. Code § 9-21-16-9 ("A person who violates this chapter [regarding parking] commits a Class C infraction."); Ind. Code § 9-21-17-24 ("A person who violates this chapter [regarding pedestrians] commits a Class C infraction."); Ind. Code § 9-21-18-15 (improper installation of sign is a Class C infraction); Ind. Code § 9-21-19-8 ("A person who violates this chapter commits a Class C infraction.").

[6] The statute the *Mitsch* court addressed was a motor vehicle law at Ind. Code § 47-1827, Burns' 1952 Repl., which provided "the provisions of this act shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein and no local authority shall enact or enforce any rule or regulation in conflict with the provisions of this act unless expressly authorized herein." Our Supreme Court determined the expression "no local authority shall enact or enforce any rule or regulation in conflict with the provisions of this act unless expressly authorized herein" could not "be construed as . . . authorizing the

enforce an ordinance that duplicated a penal statute of Indiana. *Id*. at 292, 125 N.E.2d at 24-25.

[8] In response, Carmel provides a number of arguments to support the validity of its ordinance despite the Home Rule law.[7] We shall address each individually.

[9] Carmel first argues that its ordinance "does not prescribe a penalty for conduct constituting a crime or infraction under statute." (Appellee's Br. at 20) (internal citations omitted). However, as Carmel's one sentence ordinance merely adopted wholesale the very statutes that define traffic infractions, *see supra* notes 4 and 5, Carmel's argument is not well taken.[8]

[10] Carmel also argues it had authority to adopt City Code 8-2 because it "seeks to enforce moving traffic violations which [sic] occur on local City roadways." (Br. of Appellee at 20.)[9] However, as we explained nearly forty years ago:

---

duplication of state criminal statutes by municipal ordinances." *Mitsch v. City of Hammond*, 234 Ind. 285, 292, 125 N.E.2d 21, 24-25 (1955), *reh'g denied*.

[7] Carmel does not however address, or even acknowledge, the *Mitsch* decision.

[8] Carmel also asserts Carmel City Code § 8-2 is valid because it "is not ambiguous. It is clear, precise, and can be understood with reasonable certainty." (Appellant's Br. at 19.) We cannot disagree -- that one sentence adopting and incorporating the majority of Indiana Code Article 9-21 is neither ambiguous nor difficult to understand. Nevertheless, Maraman did not assert the Ordinance was vague. He asserted it was invalid because it attempted to create a penalty for conduct that was already an infraction under State law. In light of the thrust of Maraman's argument, we fail to see the relevance of Carmel's "precise wording" argument.

[9] It cites in support Ind. Code § 36-1-6-3, but nothing in that section has any apparent application to this case. That section first provides certain ordinances may be enforced by a municipal corporation "without proceeding in court through . . . an admission of the violation . . . or administrative enforcement." Ind. Code § 36-1-6-3. But here, Carmel *did* proceed in court. Next, that section provides an ordinance defining a moving traffic violation must be enforced in accordance with Ind. Code chapter 34-28-5. *Id*. But here,

> There is no question that *the State controls all public highways and streets in Indiana.* Under such authority, the State enacted IC 1971, 9-4-1-57 (Burns Code Ed.), which provides for a thirty mile per hour speed limit in any urban district, and a fifty-five mile per hour speed limit on interstate roads and other locations.

*State, By and Through Indiana State Bd. of Accounts v. Town of Roseland*, 178 Ind. App. 661, 667, 383 N.E.2d 1076, 1080 (1978) (emphasis added). *See also* Ind. Code § 9-21-1-1 ("Except as provided in sections 2, 3, and 3.3 of this chapter, this article applies throughout Indiana."). Municipalities may "adopt by ordinance additional traffic regulations," but such ordinances "may not conflict with or duplicate a statute." Ind. Code § 9-21-1-2(a).

[11] Carmel next asserts its ordinance is valid because a speeding ordinance is "deemed effective when signs providing notice of the local traffic regulations are posted upon or at the entrances to the highway affected." (Br. of Appellee at 20) (citing Ind. Code § 9-21-1-3(b)). That subsection provides: "An ordinance or regulation adopted under subsection (a)(4), (a)(5), (a)(6), (a)(7), (a)(8), (a)(10), (a)(11), (a)(12), (a)(13), or (a)(14), is effective when signs giving notice of the local traffic regulations are posted upon or at the entrances to the highway or part of the highway that is affected." Ind. Code § 9-21-1-3(b).

[12] Carmel does not indicate which, if any, of those ten subsections might be relevant to these proceedings or offer explanation why the Carmel ordinance

---

Maraman has not alleged Carmel failed to follow the proper procedure in enforcing its ordinance; rather, he is arguing no valid ordinance exists to be enforced.

was effective pursuant to that statute. We therefore cannot uphold the ordinance on that ground. *See*, *e.g.*, Ind. R. App. P. 46 (argument on appeal must be supported by cogent reasoning); *and see Daniels v. State*, 515 N.E.2d 530, 530 (Ind. 1987) (failure to present cogent argument operates as waiver of issue on appeal).

[13] Notwithstanding the waiver, while placing traffic signs on the affected roads makes the ordinance "effective," Ind. Code § 9-21-1-3(b), the ordinance first had to be adopted under Ind. Code § 9-21-1-3(a). To meet the requirements of subsection (a), any action taken by a municipality must occur "in accordance with sections 2 and 3.3(a) of this chapter," Ind. Code § 9-21-1-3(a), and each of those sections expressly states any ordinance adopted "may not conflict with or duplicate" state law. Ind. Code § 9-21-1-2(a) ("may not conflict with or duplicate a statute"); Ind. Code § 9-21-1-2(b) ("may not conflict with or duplicate state law"); Ind. Code § 9-21-1-3.3(a) ("may not . . . conflict with or duplicate another state law"). Thus, Carmel's reliance on Ind. Code § 9-21-1-3(b) leaves it in the same predicament that caused its ordinance to be invalid under the Home Rule cited by Maraman – Carmel's wholesale adoption of chapters of Indiana Code resulted in its ordinance being nothing more than a "duplicate" of already existing State law.

[14]     Carmel's next argument relies on a statute dealing with construction zones.[10]

Carmel correctly notes one of the adopted statutes permits a local authority to

> establish temporary maximum speed limits in their respective
> jurisdictions and in the vicinity of a worksite without conducting
> an engineering study and investigation required under this article.
> The establishing authority shall post signs notifying the traveling
> public of the temporary maximum speed limits established under
> this section.

Ind. Code § 9-21-5-11(a). Nevertheless, the fact that the State gave municipalities the power to modify speed limits in work zones within their municipalities did not, *ipso facto*, also give the municipalities the authority to collect fines by local ordinance on any such modified speed limit. That the State did not relinquish such authority is evident from the other subsections of the statute that Carmel cites:

> (d) . . . a judgment for the infraction of violating a speed limit set
> under this section must be entered as follows:
>
>> (1) If the person has not previously committed the
>> infraction of violating a speed limit set under this section, a
>> judgment for a Class B infraction and a fine of at least
>> three hundred dollars ($300) shall be imposed.
>>
>> (2) If the person has committed one (1) infraction of
>> violating a speed limit set under this section in the

---

[10] This reliance is premised on the allegation that Maraman was in a construction zone when he was ticketed for speeding, although the officer did not write the ticket to so indicate. *See supra* n.2.

previous three (3) years, a judgment for a Class B infraction and a fine of at least five hundred dollars ($500) shall be imposed.

(3) If the person has committed two (2) or more infractions of violating a speed limit set under this section in the previous three (3) years, a judgment for a Class B infraction and a fine of one thousand dollars ($1,000) shall be imposed.

(e) . . . the funds collected as judgments for the infraction of violating a speed limit set under this section shall be transferred to the Indiana department of transportation to pay the costs of hiring off duty police officers to perform the duties described in IC 8-23-2-15(b).

Ind. Code § 9-21-5-11. Thus, while a city may modify a speed limit in a construction zone within the city, the recourse for the violation of such speed limit remains an infraction prohibited and punishable according to state statute. *See id.*

[15] Finally, Carmel directs us to Ind. Code § 36-1-5-4, which provides "[t]he legislative body of a unit may incorporate by reference into an ordinance or code any material." Carmel does not offer argument or explanation why this section has the effect of nullifying the Home Rule statute, Ind. Code § 36-1-3-8, or the statutes in the Article controlling Traffic Regulation, *e.g.*, Ind. Code § 9-21-1-2, and we decline to hold it nullifies those other statutes. While Carmel may incorporate material by reference, it may not incorporate in a way that duplicates the statutes that create statewide traffic infractions. *See*, *e.g.*, Ind.

Code §§ 9-21-1-2, 36-1-3-8. If a city wishes to establish local speed limits, it may do so in accordance with Ind. Code §§ 9-21-5-3(1), 9-21-5-6, and 9-21-1-3(a)(11) which gives the city the authority to adopt ordinances altering speed limits within the city; however, it is nevertheless prohibited from simply duplicating state imposed speed limits as Carmel City Code § 8-2 attempts to do.

## Conclusion

As the ordinance under which Carmel wished to prosecute Maraman was invalid, Maraman's motion to dismiss should have been granted. We must therefore reverse.

Reversed.

Crone, J., and Bradford, J., concur.