In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3836

LAWRENCE B. LENNON, *et al.*,

*Plaintiffs-Appellants*,

*v.*

CITY OF CARMEL, INDIANA, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:15-cv-02072-JMS-MJD — **Jane E. Magnus-Stinson**, *Chief Judge*.

ARGUED MAY 19, 2017 — DECIDED JULY 25, 2017

Before WOOD, *Chief Judge*, and BAUER and POSNER, *Circuit Judges*.

WOOD, *Chief Judge*. Although people raise an astonishing variety of claims in the federal courts of this country, the fact remains that there are limits on the subject-matter jurisdiction of those courts. This case implicates one of those limits: the federal district courts are not authorized to sit in review of state-court decisions, unless Congress has passed appropriate legislation. This is so even if one or all parties would like an

answer from the federal court. As the district court here rec-
ognized, nearly all of the case now before us runs afoul of this
jurisdictional rule. We affirm its dismissal of the action, with
some minor modifications.

**I**

The plaintiffs in this case are motorists who were stopped
by the local police for traffic violations in the City of Carmel,
Indiana. Each of the plaintiffs was cited for violating Carmel
City Ordinance § 8-2, which (at that time) adopted and incor-
porated the state of Indiana's traffic regulations in lieu of re-
inventing the wheel. Some of the plaintiffs admitted to the
cited offense and paid a fine. Some of the plaintiffs did not
appear at a hearing and a default judgment was entered
against them. Others were convicted of the offense at a bench
trial. And the remaining plaintiffs entered into deferral agree-
ments under which they paid a fine and avoided prosecution
or conviction. Not one of the plaintiffs appealed the citation
or judgment, or otherwise challenged the deferral agreements
in Indiana's courts.

Their acquiescence did not stem from a lack of access to
the state courts. A motorist unassociated with the current case
challenged his section 8-2 traffic citation in the Indiana state
courts and won relief when the Indiana Court of Appeals held
that the ordinance violated Indiana's Home Rule laws. See
*Maraman v. City of Carmel*, 47 N.E.3d 1218 (Ind. Ct. App. 2015),
transfer denied, 48 N.E.3d 317 (Ind. 2016).

After *Maraman* was decided, the plaintiffs in this case filed
an action in the federal district court against a hodge-podge
of local and state officials, including members of Carmel's city

council; its mayor, legal counsel, and chief of police; the municipal court; a judge of that court; and the superintendent of Indiana's Bureau of Motor Vehicles (BMV). These defendants, plaintiffs asserted, had violated 42 U.S.C. § 1983 by engaging in a wide-ranging conspiracy to deprive them of their civil rights through misuses of the Carmel traffic justice system. The complaint alleged, among other things, that plaintiffs were given false or limited information regarding their traffic infractions, that the Carmel Police Department wrongfully ticketed motorists on Interstate 465, that the City of Carmel had a policy of improperly ticketing motorists for non-moving violations, that the deferral agreements were misleading, that plaintiffs were illegally prosecuted and did not receive due process during their trials, that they were deprived of the right to be judged by a tribunal untainted by a financial interest, that the defendants knew that the cost to challenge the tickets exceeded the cost of paying the tickets, and that the defendants forwarded inaccurate information about plaintiffs' traffic violations and judgments to the BMV. For good measure, the plaintiffs also included a state-law claim for unjust enrichment against the City of Carmel.

By way of relief, plaintiffs sought damages and equitable relief, including the expungement of their section 8-2 violations from their driving records and a stay against any action the BMV might take in response to the judgments. In response to the defendants' motion to dismiss, the district court tossed the case on several grounds: certain plaintiffs lacked standing; the *Rooker-Feldman* doctrine deprived the court of jurisdiction to hear most of the claims for relief; plaintiffs had abandoned various other claims; and the claims that survived the jurisdictional bars failed to state a claim upon which relief could be granted. The plaintiffs now challenge all of those rulings.

## II

Our first step in any matter is always to ensure that both the district court and this court have jurisdiction over the case. See *Young v. Murphy*, 90 F.3d 1225, 1230 (7th Cir. 1996). One situation raising a red flag occurs when a section 1983 complainant appears to be seeking review of a state-court judgment. *Id.* at 1231. That is a power that has not, in general, been conferred on the lower federal courts; only the Supreme Court has it, and its review is limited to questions of federal law. See 28 U.S.C. § 1257; *Skinner v. Switzer*, 562 U.S. 521, 532 (2011). Federal courts do not have the power to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). This principle is commonly referred to as the "*Rooker-Feldman* doctrine," after the cases that first recognized it: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

The *Rooker-Feldman* bar is jurisdictional; violations of it cannot be waived and thus preclude a court from considering the merits of the claim. See *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 555 (7th Cir. 1999) (noting that the applicability of *Rooker-Feldman* must be determined before considering the arguments). There is no exception for egregious error. *Kelley v. Med-1 Sols., LLC*, 548 F.3d 600, 603 (7th Cir. 2008). "[L]itigants who feel a state proceeding has violated their constitutional rights must appeal that decision through their state courts and thence to the Supreme Court." *Young*, 90 F.3d at 1230.

We have already said enough to show why *Rooker-Feldman* applies here to the claims the district court labeled the "Judgment/Adjudication Claims." The heart of the plaintiffs' grievances is that they were cited in state traffic court for violations of an ordinance that the Indiana courts later held to be invalid (albeit on home-rule grounds, not because of anything particular to the traffic rules). Plaintiffs claim to have been injured by paying fines and through the inclusion of "invalid" traffic citations on their driving records; those citations in turn have allegedly increased their insurance rates. All of the cases, with the exception of those resting on deferral agreements, fall squarely within the scope of *Rooker-Feldman*: the plaintiffs lost in state court, their injuries flowed from the state-court judgments, the injuries occurred prior to the federal proceedings, and they want the federal courts to review and reject the state-court judgments. Any fines the plaintiffs paid or negative consequences they experienced because of their marred driving records flow directly from the state traffic judgments.

The plaintiffs naturally resist this line of argument. In their view, Carmel's ordinance was invalid, which (they reason) makes their judgments "legally meaningless." They argue that they thus have no need to overturn the judgments, because the judgments are nothing more than worthless pieces of paper.

There are a number of problems with this approach. The most obvious is that it asks the federal court simply to *assume* that the traffic judgments are void, and then move immediately to the question of remedy. But to declare that the state-court judgments are void is to review those judgments—precisely the step that *Rooker-Feldman* says we cannot take. See *Taylor v. Fed. Nat. Mortg. Ass'n*, 374 F.3d 529, 533 (7th Cir.

2004). The legal status of the plaintiffs' state traffic judgments is a question for the Indiana courts. Moreover, even if the judgments were void, *Rooker-Feldman* would still prevent us from hearing the case. The question for *Rooker-Feldman* purposes is not whether the state judgment was wrong or unconstitutional or void. Rather, it is whether, on the one hand, the injuries for which plaintiffs seek redress resulted or are inextricable from the state judgment, or if on the other hand the plaintiffs have alleged an injury independent of the state judgment. *Johnson v. Orr*, 551 F.3d 564, 568–70 (7th Cir. 2008); *Taylor*, 374 F.3d at 533.

Applying these rules to the complaint before us, we can see that there are only two groups of claims that *Rooker-Feldman* does not bar: those that allege injuries arising from traffic stops that preceded and were unrelated to the traffic judgments (called the "Pre-Judgment/Pre-Adjudication Claims" by the district court), and those brought by plaintiffs who entered into deferral agreements and whose claims thus are not subject at this time to any state-court judgment that could injure them. The remainder of plaintiffs' claims describe damages related to fines paid or points on their driving records. These alleged injuries are either too speculative or they cannot be separated from the state-court traffic judgments. Any remedy plaintiffs have or had lies in the Indiana courts.

### III

This is not to say that we find merit in the claims that survive *Rooker-Feldman*; we do not. First, the allegations stemming from the traffic stops lack any useful detail: all of the plaintiffs say that they were injured by being provided with inaccurate or misleading information with their citations, and that this lack of information made it more difficult for them to

defend against the citations (including by taking an appeal). They continue that they were prevented from freely traveling on the roads in and around Carmel, and that they suffered the humiliation of a traffic stop. While we are not convinced that these allegations are sufficient to state a claim upon which relief could be granted, we need not tackle that question. That is because the plaintiffs fail to allege that any of the defendants named in their suit were personally involved in the stops. With respect to the individual defendants, this is a fatal flaw because there is no vicarious liability in a suit under section 1983. See *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (same principle as applied to a *Bivens* action, relying on section 1983 cases). With respect to the municipal court of Carmel, there is no allegation that the court has anything to say about how tickets are written and what is cited on them. That alone defeats any *Monell* claim plaintiffs might be trying to bring. See *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978). The municipal judge enjoys absolute immunity for actions taken in the course of adjudicating tickets. See *Stump v. Sparkman*, 435 U.S. 349 (1978). And the BMV is an arm of the state and thus is not a "person" suable under section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989).

Before turning to the claims related to the deferral agreement, we comment briefly on the Pre-Adjudication Claims. The district court found these to be too poorly developed to proceed, and in all likelihood to be barred either on standing grounds, see *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), or *Rooker-Feldman*. We agree with the first point: it is difficult to see how these might state a claim on which relief can be granted, even if we thought standing could be shown. We have no reason to disturb the district court's judgment with respect to them.

We last turn to the claims related to the deferral agree-
ments: that the agreements were misleading, and that they
forced plaintiffs to pay more than they would have if a judg-
ment had been entered against them. (Plaintiffs had also as-
serted that they were harmed by negative notes on their driv-
ing records, but the district court dismissed those claims for
lack of standing, and plaintiffs have dropped that point on
appeal. We therefore do not address it.) The district court
found that the plaintiffs had abandoned their deferral-agree-
ment claims when (in an apparent effort to avoid the *Rooker-
Feldman* problem) they limited their case to pre-conviction
claims wholly independent of the section 8-2 convictions.
Plaintiffs contend that they preserved these claims.

Thanks to the deferral agreements, this subset of the plain-
tiffs was not subject to final state convictions. *Rooker-Feldman*
is thus not relevant to this part of the case. Even assuming that
the district court was mistaken to find abandonment, how-
ever, its ultimate judgment was correct. The allegations of the
deferral plaintiffs fail to state a claim under section 1983. They
do not explain in what way the agreements were misleading
or how either the agreements or the fines were *unconstitu-
tional*. At most, plaintiffs allege that they were provided inac-
curate information, and that that inaccurate information in-
duced them to enter into their deferral agreements. They ap-
pear to admit that they did receive the promised *quid pro quo*
for the agreement: they were not prosecuted for their alleged
traffic offense. Perhaps there is a state-law theory that would
cover this situation, or perhaps not—we would prefer not to
speculate. But there is no constitutional claim. Even if the
plaintiffs are correct that the fines assessed under the deferral
agreements were higher than they otherwise would have
been had there been a conviction (and that is far from clear),

such a disparity need not offend the Constitution. The plaintiffs who entered into deferral agreements simply have not alleged facts that state a claim for a constitutional tort.

This failure to demonstrate a constitutional problem affects more than just the plaintiffs with deferral agreements. Rather, it pervades this entire lawsuit. We have yet to see anything that engages the federal constitution, as opposed to Indiana's internal allocation of responsibility for codes regulating traffic. Even if the city's police department was issuing tickets and motorists were paying fines pursuant to an ordinance that was invalid under Indiana law, the conclusion that motorists' constitutional rights were violated does not necessarily follow. "[S]tate action, even though illegal under state law, can be no more and no less constitutional under the [Constitution] than if it were sanctioned by the state legislature." *Snowden v. Hughes*, 321 U.S. 1, 11 (1944); see also *Whitman v. Nesic*, 368 F.3d 931, 935 n.1 (7th Cir. 2004) ("Regardless of a plaintiff's insistence that a defendant failed to follow state law, the mere fact that state rules or statutes are violated does not in and of itself amount to a constitutional violation or give rise to an actionable § 1983 claim.") (citations omitted). The plaintiffs do not allege that they were stopped without probable cause—indeed, they do not even contest that they were committing traffic infractions. There is nothing to support the extravagant contention that the action of the Indiana Court of Appeals in striking down this traffic ordinance on home-rule grounds demonstrates that the city was engaged in a wide-ranging conspiracy to deprive plaintiffs of their civil rights.

**IV**

When a district court dismisses an action for lack of jurisdiction, the dismissal must be without prejudice. *Mains v. Citibank, N.A.*, 852 F.3d 669, 678 (7th Cir. 2017). This is because a dismissal with prejudice acts operates as a disposition on the merits, which a court without the power to hear a case may not issue. *Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004). A complaint that fails to state a claim, on the other hand, is not foreclosed jurisdictionally and may be dismissed either with or without prejudice. *Mains*, 852 F.3d at 678.

Federal courts lack the power to hear most of the claims in this complaint; the exceptions are those stemming from the deferral agreements and, if there is anything to them, the Pre-Adjudication Claims. We therefore modify the district court's judgment to show that the claims brought by all plaintiffs except those subject to deferral agreements and those in the Pre-Adjudication group are dismissed without prejudice. The claims brought by the latter two groups of plaintiffs are dismissed with prejudice, and the supplemental state claims remain dismissed without prejudice. As so modified, we AFFIRM the judgment of the district court.