NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 14, 2018[*]
Decided June 21, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-2335

| | |
|---|---|
| TONEY FORD, SR., | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Indiana, Fort Wayne Division. |
| *v.* | |
| | No. 1:14CV320-PPS |
| DEREK SESSOMS, | |
| *Defendant-Appellee.* | Philip P. Simon, *Judge.* |

## O R D E R

Police officer Derek Sessoms tailed a car in which he believed a suspect with an outstanding arrest warrant was riding. The man in the car, however, was not the suspect. The driver was Dr. Toney Ford, who tried to evade his unknown pursuer and in so doing crashed his car. Ford, who is black, sued Officer Sessoms alleging that he engaged in racial profiling in violation of the Equal Protection Clause of the Fourteenth

---

[*] We agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Amendment. He also brought claims against several other police officers, elected officials, and a local newspaper and two of its employees. The district court dismissed all but the equal-protection claim against Officer Sessoms and later entered summary judgment for the officer. We affirm.

While on patrol in Marion, Indiana, Officer Derek Sessoms spotted Anthony Clark, a known gang member. As Officer Sessoms radioed his dispatcher to confirm that Clark had an outstanding arrest warrant, Clark ran down an alley and the officer lost sight of him. A few minutes later, Officer Sessoms spotted a car that he believed the gang used and suspected that Clark was now inside it. He was not; Ford was the driver and he was alone in the car. As the officer pursued, Ford accelerated to approximately 20 miles per hour above the speed limit. He was "fearful" that "this strange vehicle" threatened his safety, so he tried to elude Officer Sessoms at an intersection by squeezing his car between the sidewalk and another car. This dangerous maneuver was unsuccessful; Ford crashed into a fire hydrant and a stop sign. He got out of his car and tried to leave the crash site, but Officer Sessoms pursued on foot and arrested him. Ford pleaded guilty to leaving the scene of an accident and fleeing a police officer.

About a year after this confrontation, Ford sued Officer Sessoms, several other police officers, and various Marion elected officials alleging that they violated his civil rights. In particular Ford asserted that in attempting to pull him over and arrest him, Officer Sessoms discriminated against him based on his race in violation of the Equal Protection Clause and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and that the other municipal defendants were vicariously liable for the officer's conduct. Ford added that the defendants violated his rights under the Free Exercise Clause and that the police chief and municipal officials failed to adequately train police officers, which resulted in Officer Sessoms racially harassing him. Ford further alleged that the defendants breached an implied contract (a promise to "protect and serve" citizens) and also "acquiesced in the wrongful prosecution" of him. In addition, he sued a newspaper and two of its employees for allegedly libeling and slandering him in reporting his arrest.

Because Ford sought to proceed in forma pauperis, the district judge screened his complaint, *see* 28 U.S.C. § 1915(e)(2)(B), and dismissed all counts except the equal-protection claim against Officer Sessoms. The judge dismissed the equal-protection claims against the other defendants because there is no vicarious liability under 42 U.S.C. § 1983 and Ford did not allege that they personally participated in the traffic

stop and arrest. The judge also dismissed (1) the free-exercise claims because Ford's allegations did not concern religious activity; (2) the failure-to-train claims because the allegations were conclusory; and (3) the Title VI claim because Ford did not connect the traffic stop to any program receiving federal financial assistance. Finally, the judge relinquished supplemental jurisdiction over the state-law claims because they were likely to predominate over the one remaining federal claim.

During discovery, Ford moved for sanctions under Rule 11 and 37 of the Federal Rules of Civil Procedure asserting that Officer Sessoms made false representations in answering the complaint and Sessoms's supervisor did not return her signed deposition transcript and an errata sheet to the stenographer. A magistrate judge declined to issue sanctions, explaining that Ford had not shown that Officer Sessoms knowingly made false representations in answering the complaint and that Rule 37 does not prohibit the conduct that Ford identified. Ford objected to the magistrate judge's rulings, but the district judge concluded that the magistrate judge did not clearly err. Ford also challenged Officer Sessoms's failure to timely produce the police department's standard operating procedures, but the magistrate judge granted his motions to compel and Ford did not move for sanctions on this ground.

On cross-motions for summary judgment, the district judge rejected Ford's equal-protection claim and entered judgment for Officer Sessoms. The judge held that Ford lacked evidence that the officer acted with a discriminatory purpose in following and arresting him or that he treated him differently than similarly situated persons not in his protected class. The judge also concluded that Ford did not raise a triable question of fact under a class-of-one theory because he lacked evidence that he was irrationally singled out for arrest compared to others fleeing accident scenes.

On appeal Ford first challenges the judge's dismissal of most of his claims at screening. Regarding his free-exercise claims, Ford contends that the Free Exercise Clause is "not limited to religious considerations." That is wrong. And although a plaintiff does not have to plead legal theories in a complaint, we cannot identify any theory under which the allegations in Counts One and Three—which relate to the same alleged race-based harassment—could state a constitutional claim under a provision other than the Equal Protection Clause. Ford has never explained the relevance of the Free Exercise Clause to this case.

Regarding the equal-protection claims against the defendants other than Officer Sessoms, Ford first asserts that the district judge unreasonably denied leave to amend so that he could sue Sessoms's supervisor for the traffic stop. But Ford never sought leave to amend. At most, he buried in his sanctions motion a request that the judge "insert" the supervisor as a defendant. Moreover, Ford did not state any viable claim for relief against any of the police officials or municipal officeholders other than Officer Sessoms. None of these defendants were personally involved in the alleged unconstitutional conduct, which "is a fatal flaw because there is no vicarious liability in a suit under section 1983." *Lennon v. City of Carmel*, 865 F.3d 503, 507–08 (7th Cir. 2017). Regarding the City and the defendants named in their official capacities, Ford's conclusory complaint did not plausibly allege an actual or de facto policy of indifference to racial harassment, and therefore he did not state a claim under *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 690–91 (1978). Finally, Ford's discrimination claim under Title VI was properly dismissed. Drivers on roads subsidized by the federal Department of Transportation do not participate in a federal "program or activity," 42 U.S.C. § 2000d.

Ford also contends that the district judge improperly relinquished supplemental jurisdiction over his claims under state contract and tort law. But the judge reasonably concluded that the state-law claims were likely to predominate over the single straightforward federal claim that remained after screening. *See* 28 U.S.C. § 1367(c)(2); *Dargis v. Sheahan*, 526 F.3d 981, 991 (7th Cir. 2008). The state-law claims centered on acts both related and unrelated to the equal-protection claim against Officer Sessoms. The slander and libel claims against the newspaper employees were particularly attenuated.

Ford next raises several challenges to the sanctions rulings. Some of the arguments are waived, and none has merit. The rulings were well within the judge's broad discretion over matters of discovery, including sanctions. *See Kuttner v. Zaruba,* 819 F.3d 970, 974 (7th Cir. 2016) (explaining that discovery rulings will be upheld unless they lack a basis in law or fact or clearly appear to be arbitrary).

Finally, Ford challenges the entry of summary judgment, arguing that a reasonable fact finder could disbelieve Officer Sessoms's account of the attempted traffic stop and thus conclude that the officer had a discriminatory motive in following and arresting him. But Ford does not contradict the evidence that Officer Sessoms mistook Ford's identity and then pursued him for speeding away. Ford cannot create a triable issue of fact simply by challenging Sessoms's credibility on this point. *See Morgan*

*v. SVT, LLC*, 724 F.3d 990, 999 (7th Cir. 2013). He therefore cannot show that Officer Sessoms engaged in racial profiling, *see Sow v. Fortville Police Dep't*, 636 F.3d 293, 303 (7th Cir. 2011), or otherwise had a discriminatory motive, *see Chavez v. Ill. State Police*, 251 F.3d 612, 636, 645 (7th Cir. 2001). Ford's claim fares no better under a class-of-one theory, which requires him to show that Officer Sessoms intentionally treated him differently from similarly situated individuals without a rational basis. *See Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). Again, no evidence contradicts Sessoms's explanation that he mistook Ford for Clark and continued pursuit because Ford sped away. Furthermore, the decision to arrest an individual is by its nature one that is discretionary— "subjective and individualized"—and so it is not an appropriate target for a class-of-one challenge. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 604 (2008).

We have considered Ford's other arguments, and none has merit.

AFFIRMED