NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 30, 2018[*]
Decided July 30, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-3178

| | |
|---|---|
| PATRICIA A. WESTMORE and DWIGHT R. WESTMORE, *Plaintiffs-Appellants*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 14-CV-861-wmc |
| DAVID HYDE, et al., *Defendants-Appellees*. | William M. Conley, *Judge*. |

**O R D E R**

Patricia and Dwight Westmore sued local officers in Ashland County, Wisconsin, after the officers removed from the Westmores' farm four abused horses and euthanized a nearly dead donkey. The Westmores assert that the seizures violated the Fourth Amendment and their right to due process under the Fourteenth Amendment.

---

[*] We have agreed to decide this case without oral argument because the briefs and the record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

The district court dismissed the due-process claim at summary judgment, and a jury ruled against the Westmores on their Fourth Amendment claims. Because the record supports reasonable cause for the seizure and the Westmores received all the process that they were due, we affirm the judgment.

The case begins with an investigation of animal abuse. In December 2013, Callae Hyde, Ashland County's humane officer, dispatched her husband David—himself an animal-control officer—to investigate a report of abuse at the Westmores' farm. David and a sheriff's deputy named Terri Provost entered the farm without a warrant, but believing that they had Patricia's consent to a search. They discovered a mortally ill donkey and four horses that were malnourished, dehydrated, and unsheltered from the winter weather. Wisconsin law authorizes county officials to seize animals from their owners where "reasonable grounds" exist to believe that the animals are deprived of adequate food, water, or shelter. *See* WIS. STAT. §§ 173.21(1)(a), 951.13, 951.14. Two veterinarians were summoned to examine the animals. They opined that the animals were in imminent danger of death, so the two officers seized the horses. The officers had the donkey euthanized because the veterinarians said that it was so near death that euthanasia was the only way to ease its suffering.

Two state-court proceedings came next. First, Patricia petitioned for the horses' return. *See* WIS. STAT. §§ 173.21(4), 173.23(1). But eventually she stipulated to an order dismissing the case. The order provided that the horses would be returned to her and that she would reimburse the county for its veterinary and boarding costs. By then one of the horses had died in the county's possession. Second, Patricia was charged with five misdemeanor counts of mistreating animals. *See* WIS. STAT. §§ 951.02, 951.18. Under a plea agreement, Patricia pleaded guilty to three charges of animal abuse, the court deferred entry of judgment, and the prosecutor moved to dismiss all the charges after Patricia completed 18 months of probation. Among other conditions, Patricia had to pay restitution to the county and care for her animals while she was on probation.

This federal lawsuit under 42 U.S.C. § 1983 followed. As relevant here, the complaint alleges that Callae and David Hyde and Deputy Sheriff Provost violated the Fourth and Fourteenth Amendments. According to the complaint, they violated the Fourth Amendment by entering the Westmores' land and seizing the animals without a warrant and by using excessive force against Patricia. They violated the Fourteenth Amendment by not providing the Westmores with a hearing before seizing the animals.

Only part of the case went to trial. The Fourteenth Amendment claims failed at summary judgment, the district judge reasoned, because based on the veterinarians' opinions, the officers had to seize the animals swiftly, and post-deprivation remedies satisfied due process. The Fourth Amendment claims advanced to trial to resolve whether the Westmores consented to the warrantless search of their property, whether exigent circumstances justified that search and the seizure of their animals, and whether Deputy Provost used excessive force against Patricia. After a five-day trial, a jury ruled against the Westmores on the Fourth Amendment claims. The Westmores then moved for a new trial and asked the judge to reconsider his ruling on their due-process claim. The judge denied the motion, and this appeal followed.

The Westmores, now proceeding pro se, devote the bulk of their appellate submissions to attacking the validity of the veterinarians' opinions about the health of the Westmores' animals. They attach documents that do not appear to be part of the appellate record. The upshot, and their first principal argument, seems to be that, because the veterinary opinions were supposedly unreliable, David Hyde and Deputy Provost violated the Fourth Amendment by unreasonably relying on them to seize the horses and order the donkey euthanized.

This argument has at least two insuperable problems. First, we may not consider materials that are outside the record. *See McInnis v. Duncan*, 697 F.3d 661, 664–65 (7th Cir. 2012); *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 795 (7th Cir. 1997). Second, non-medical officers may generally rely on the professional judgment of medical professionals without exposing themselves to liability under 42 U.S.C. § 1983. *See Estate of Perry v. Wenzel*, 872 F.3d 439, 458 (7th Cir. 2017); *see also Askew v. City of Chicago*, 440 F.3d 894, 896–97 (7th Cir. 2006) (in making a seizure, police may rely on a competent witness's plausible assertions, even if other information may later cast doubt on the witness's observations). Here two trained and experienced veterinarians both examined the animals and told the state officers that the horses were in imminent danger of death without intervention and that the donkey must be euthanized to end its suffering. Even if the state officers had received an opposing opinion, their reliance on the veterinarians' opinions in seizing the animals complied with the Fourth Amendment.

The Westmores next contend that David's role in the seizure was unlawful because he "did not have authority to carry out an investigation or seizure." This argument seems to be based on Wisconsin law, which authorizes humane officers (like David's spouse, Callae) but not animal-control officers (like David) to investigate

animal abuse. *See* WIS. STAT. § 173.07(2). This argument, too, is meritless for several reasons. First, a violation of state law is not a violation of a federal right covered by § 1983. *Lennon v. City of Carmel*, 865 F.3d 503, 509 (7th Cir. 2017). Second, the state law was not offended. It is undisputed that David acted under orders from Callae, whom he consulted on the phone during his investigation. Third, Provost, as a deputy sheriff, had uncontested authority to investigate allegations of animal abuse. The Westmores do not argue that the jury's verdict for Provost is against the manifest weight of the evidence. Nor do they explain how David's mere presence during this otherwise lawful search and seizure could violate their rights.

Finally, the Westmores renew their argument that due process entitled them to a hearing before their donkey was euthanized and their horses were seized. But the Westmores received all the process due to them. As we have observed, two trained animal-welfare professionals evaluated the animals on-site and concurred that their immediate seizure was necessary to save them or relieve their suffering. No more pre-deprivation process was due, for two reasons. First, the uncertain value of any added pre-seizure process is outweighed by the government's compelling need to curtail immediately the animals' suffering and avoid needless deaths. *See United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 486–87 (6th Cir. 2014) (concluding that removal of animals without hearing did not violate owners' right to procedural due process); *Reams v. Irvin*, 561 F.3d 1258, 1263–64 (11th Cir. 2009) (same); *cf. Siebert v. Severino*, 256 F.3d 648, 660 (7th Cir. 2001) (concluding that pre-seizure hearing may have been required where animals were removed based on report of "volunteer investigator who apparently lacked sufficient knowledge about horses to determine whether appropriate care was given"). Second, when a plaintiff concedes that she lacked the factual basis necessary for a property interest, due process is not implicated. *See Codd v. Velger*, 429 U.S. 624, 627–28 (1977). Patricia pleaded guilty plea to three counts of abusing these animals, and under Wisconsin law this divested her of control over the abused animals.

AFFIRMED