NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 2, 2018[*]
Decided November 2, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-1524

| | |
|---|---|
| OSCAR GARNER,<br>    *Plaintiff-Appellant,*<br><br>*v.*<br><br>LEBBEUS BROWN, et al.,<br>    *Defendants-Appellees.* | Appeal from the United States District<br>Court for the Eastern District<br>of Wisconsin.<br><br>No. 16-C-1675<br><br>Lynn Adelman,<br>*Judge.* |

**O R D E R**

Oscar Garner, an inmate at the Wisconsin Secure Program Facility, sued four correctional officers under 42 U.S.C. § 1983 for violating the First Amendment by penalizing his protected speech, which he says was a letter informally raising many inmates' complaints about prison conditions. The district court denied Garner's motion

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. CIV. P. 34(a)(2)(C).

for summary judgment and granted the defendants' cross-motion. Because the prison has a legitimate interest in safety, we affirm the district court's judgment.

We review de novo a district court's decision on cross-motions for summary judgment, construing all facts and drawing all reasonable inferences in favor of the party against whom the motion under consideration was filed. *Kemp v. Liebel*, 877 F.3d 346, 350 (7th Cir. 2017). Here we recount the facts in the light most favorable to Garner.

In December 2015 Captain Lebbeus Brown was investigating possible gang activity by the Gangster Disciples at the prison. Brown discovered that Garner (not a suspected gang member) was communicating with the gang's leader at the prison through a liaison, so he searched Garner's cell and discovered three letters: copies of two letters that had been found in another inmate's cell and a letter dated December 2015 and addressed to Brown, another captain, and the prison's administration. The third letter appeared to Brown to be similar to one of the other letters. It was from "the prisoners of WSPF" and used the phrases "we propose" and "we ask" to express concerns about prison conditions. This third letter is the basis of Garner's suit.[1]

Brown was concerned that the Gangster Disciples were coordinating an organized disturbance. He continued his investigation by interviewing Garner about the letter. Garner told Brown that another inmate (a high-ranking gang member) had written a letter and then asked Garner, a jailhouse lawyer, to make it "sound better." Garner maintained that the letter's purpose was an attempt to resolve issues informally before writing a legitimate group complaint through the prison's grievance system. The Wisconsin Department of Corrections' Inmate Complaint Review System requires a prisoner to attempt to informally resolve any complaint before submitting a formal grievance to a complaint examiner. But Brown doubted Garner's intent. Garner then was placed in temporary lockup so the investigation could continue.

After his investigation, Brown issued Garner a conduct report for authoring and possessing a "group petition" in violation of WDOC regulations that forbid "group resistance and petitions" other than "group complaints" filed through the formal inmate grievance system. Correctional Officer Shelly Hill, another defendant, wrote up

---

[1] The letter was inadvertently destroyed by a prison official who is not part of this suit. Garner has provided what he says is another copy of the letter, but the defendants do not agree that it is authentic. The defendants do not say how the copy differs from their recollection of the original. Our decision does not turn on any dispute about the letter's contents, however, so its authenticity is immaterial.

the report, and Brown signed his name. Brown concluded that the letter was not a permitted group complaint because it was not written on an inmate complaint form, was not addressed to the prison's complaint examiner, used demanding language, and had been shared among inmates.

While in lockup, Garner requested that Brown attend and bring evidence to his disciplinary hearing. Lieutenant Joseph Cichanowicz, the hearing officer, approved that request. On the last day Garner could stay in temporary segregation before a disciplinary hearing, Mark Kartman, the prison's Security Director, ordered Cichanowicz to convene the hearing. Unbeknownst to Kartman, Brown was not working that day and was unavailable. Garner asked to delay the hearing, but Cichanowicz refused. After the hearing, Cichanowicz found that Garner had violated the prohibition on possessing group petitions and gave Garner 120 days in disciplinary separation.

The next day Garner wrote the warden, stating that Brown had not attended the hearing despite Garner's request. The warden believed that this violated Garner's due-process rights because inmates may have the reporting staff member testify as a witness at disciplinary hearings. The warden then dismissed the conduct report and transferred Garner out of segregation and back into the general prison population. Garner spent a total of 2 days in disciplinary segregation.

Garner then filed this suit for damages against Brown, Hill, Cichanowicz and Kartman. (Garner does not challenge the dismissal of his official-capacity claims against these defendants.) He alleged that Brown violated his right to free speech by confiscating the letter and that Brown and Hill retaliated against him by writing the conduct report that landed him in disciplinary segregation. And, Garner claimed, Cichanowicz and Kartman knew about the retaliation but failed to intervene.

Garner moved for summary judgment and asked the district judge to recruit counsel for him. The judge denied the motion for counsel because Garner demonstrated that he could "coherently present his case." The defendants then filed their own motion for summary judgment, which the district judge granted. The judge explained that Garner's letter was not protected speech because, as the defendants had argued, it was inconsistent with the prison's legitimate penological interests. Even though the defendants' reasons for concluding that the letter could lead to unrest or violence were "tenuous," the judge stated, that conclusion was "not so implausible" as to be "groundless." The judge noted, however, that the prison's prohibition on "group

petitions" and the requirement that prisoners attempt to informally resolve grievances before filing permitted "group complaints" appeared to be in tension.

On appeal, Garner primarily argues that his letter is protected speech—a requirement to prevail on his claims of both denial of free speech and retaliation for protected activity. *Turner v. Safley*, 482 U.S. 78, 89 (1987), tells us whether a prisoner's speech is protected by the First Amendment. *See Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). We therefore must examine whether Garner engaged in speech consistent with legitimate penological interests, whether Garner has alternative means available to exercise his First Amendment rights, what impact an accommodation of the right would have on guards and inmates and prison resources, and whether there are "ready alternatives" available. *See Turner*, 482 U.S. at 89–90; *Bridges*, 557 F.3d at 551.

We conclude that Garner's First Amendment claims fail because his letter was not protected speech. Filing a non-frivolous grievance is activity protected by the First Amendment. *See Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015). But Garner's letter was not a grievance—not even he claims it was—so it cannot be protected speech on that basis. Moreover, the defendants provided evidence that the letter was incompatible with the legitimate penological interest of prison security. Prison security is unquestionably a legitimate penological goal, *see Overton v. Bazzetta*, 539 U.S. 126, 133 (2003), and Brown attested that group petitions and gang activity have led to riots, disrespect for staff, and violent confrontations. Brown further attested he thought the letter could have signaled that a disruption at the prison was being planned because the letter impliedly demanded changes. Garner contends that phrases such as "we ask" and "we propose" could not be reasonably construed as demands or threats, but the "we"—which suggested coordination among inmates and specifically gang members— not the choice of verbs, was of concern. That concern was exacerbated, according to the defendants, because they could not determine which prisoners had signed the letter from "the prisoners of WSPF." Therefore, we cannot conclude that there is not a rational connection between the concern for prison security and the guards' actions, especially because Garner has no evidence to contradict the defendants' view that the letter posed a threat. *See Van den Bosch v. Raemisch*, 658 F.3d 778, 788 (7th Cir. 2011).

The other factors also cut in favor of determining that the letter was not protected speech. It is undisputed that inmates may file group complaints through the inmate grievance system. That demonstrates that Garner has acceptable alternative means of expression. *See Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977); *Jackson v. Frank*, 509 F.3d 389, 392 (7th Cir. 2007). Though inmates must first

attempt informal resolution, nothing prevents them from doing so on an individual basis before signing a group grievance. The impact that accommodating Garner's right would have on prison resources also favors the defendants' position; Garner does not dispute that allowing group petitions could disrupt normal operations because they "generate intimidation and coercion" among inmates. We are especially deferential to prison administrators' judgments about the effects on staffing and resources. *Overton*, 539 U.S. at 135. Finally, Garner has not suggested any "ready alternatives" to the prison's approach of confiscating his letter. *Id.* at 136.

Garner resists this conclusion by arguing that the defendants misclassified the December letter as a forbidden group petition rather than as a permissible group complaint. But, even if Garner were correct about how to interpret the Department of Corrections' regulations, that violation of state law would not give rise to a cognizable constitutional claim under section 1983. *See Lennon v. City of Carmel*, 865 F.3d 503, 508–09 (7th Cir. 2017); *Whitman v. Nesic*, 368 F.3d 931, 935 n.1 (7th Cir. 2004).

Unable to raise a genuine issue of material fact about whether he engaged in protected speech, Garner cannot prevail on his claims that the confiscation of the letter violated the First Amendment, that Brown and Hill retaliated against him for protected conduct, or that Cichanowicz and Kartman failed to intervene.

Finally, Garner argues that the district court abused its discretion by failing to recruit counsel for him. But the district judge applied the correct legal standard, *see Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007) (en banc), and reasonably concluded that, based on the quality of Garner's filings and his ability to present his arguments clearly, he could adequately litigate his case. We see no abuse of discretion.

AFFIRMED